[No. C014558. Third Dist. Feb. 10, 1995.]

TIMOTHY KIRK EVANS, as Personal Representative, etc., Plaintiff and Respondent, v.
MARK PAYE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Allan S. Haley for Defendant and Appellant.

Castleman & Haskell, M. Kathleen O'Blennis and Terrence P. Murphey for Plaintiff and Respondent.

## OPINION

**SCOTLAND, Acting P. J.**—This appeal arises from the effort of plaintiff Timothy Kirk Evans, as personal representative of the estate of Larry Lloyd Royse, to enforce a money judgment against William and Emma Paye by executing on debts allegedly owed to them by their son, defendant Mark

Paye.[1] (Code Civ. Proc., §§ 700.040, 701.010 et seq. [under certain circumstances, these sections permit a judgment creditor to levy on amounts owed by a third person to the judgment debtor].)

On appeal, Mark contends the trial court erred in concluding that his denial of an alleged $35,000 debt to William and Emma was not made in good faith; consequently, the court should have required plaintiff to bring a creditor's suit to determine whether the $35,000 received by Mark from William and Emma was in fact a loan subject to being applied to their judgment debt in favor of plaintiff. Mark also claims the record does not support the court's decision to award attorney fees and costs to plaintiff for Mark's failure to disclose the $35,000 obligation in the memorandum of garnishee he filed in accordance with Code of Civil Procedure section 701.030,[2] and the court wrongly denied his motion for reconsideration of that award.

In the published portion of this opinion, we reject Mark's first contention. As we shall explain, statutes governing the enforcement of judgments authorize the trial court in a summary proceeding, rather than in a creditor's suit, to determine the existence of a debt by a third person to a judgment debtor if the court determines the third person's denial of the alleged debt was not made in good faith. Once the judgment creditor has presented prima facie evidence of the existence of a debt by the third person to the judgment debtor, the burden shifts to the third person to show by a preponderance of the evidence that his or her denial of the debt is made in good faith. The third person does not satisfy this burden simply by offering an explanation which, on its face, is not patently frivolous or an obvious sham. Otherwise, the third person could defeat the purpose of the statutory scheme by presenting any facially plausible explanation for denying the debt, regardless of what weaknesses become evident when the explanation is scrutinized together with other evidence received by the court. Rather, the court must consider the totality of the circumstances in determining whether the third person has established good faith by a preponderance of the evidence. Because the evidence in this case supports the trial court's finding that Mark's denial of a $35,000 debt to the judgment debtors was not made in good faith, the court was authorized to determine the existence of the debt without requiring the judgment creditor to file a creditor's suit.

---

[1] For simplicity and clarity, we hereafter will refer to various members of the Paye family by their first names and will use their first and middle names when necessary to differentiate between family members who have the same first name.

Mark's parents, William and Emma, generally used their middle names (Paul and Evelyn, respectively) in conducting business affairs. Mark's counsel did likewise in his appellate briefs. However, consistent with the majority of legal documents filed with the trial court, we shall refer to them by their first names.

[2] Further section references are to the Code of Civil Procedure unless specified otherwise.

In the unpublished part of the opinion, we reject Mark's challenge to the award of attorney fees and costs, which was ordered as a result of Mark's failure to disclose the $35,000 obligation in the memorandum of garnishee he filed with the court.

## FACTS AND PROCEDURAL BACKGROUND

This case has its genesis in an Arizona action by plaintiff against Mark's brother, John Paul, for a partnership accounting and imposition of a constructive trust. Plaintiff settled that action with John Paul for a payment of $200,000, plus a promissory note for $600,000. The note was secured by certain real property and guaranteed by William and Emma.

When the promissory note was not paid, plaintiff instituted this action against William and Emma on the guarantee. In April 1991, judgment was entered against them in the amount of $885,906.31, plus costs and attorney fees.

Thereafter, plaintiff initiated proceedings to enforce his money judgment against William and Emma. To that end, the Nevada County Sheriff served on Mark a copy of a writ of execution and notice of levy, and requested him to complete a sworn memorandum of garnishee, pursuant to section 701.030. The memorandum of garnishee posed the following inquiry: "If you owe money to the judgment debtor which you will not pay to the levying officer, describe the amount and terms of the obligation and the reason for not paying it to the levying officer." On July 18, 1991, Mark responded: "Don't owe any money."

On October 15, 1991, plaintiff conducted a judgment debtor examination of William, during which plaintiff asked about William's assets. William testified he had transferred property for no consideration, and also had made loans of cash, to various family members, including Mark. William loaned $70,000 to his grandson, John Anthony, prior to the first examination of debtors, which occurred on August 26, 1991.[3] Shortly after the loan to John Anthony and sometime before August 26, William loaned $35,000 to Mark. Regarding the $35,000 loan to Mark, William testified he expected that the loan would be repaid, that a written promissory note would be drawn up by his counsel, and that interest would be charged in the range of 5 or 6 percent. William mentioned no other loan to Mark.

When plaintiff conducted a judgment debtor examination of Mark (§ 708.120, subd. (a) [a third person may be examined if he or she "has

_____

[3]A memorandum of garnishee filed by John Anthony confirms a debt of $75,000 to William with a repayment date of June 26, 2001.

possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor in an amount' exceeding $250"]), Mark testified he had received $278,000 from his parents to use for a business venture with his nephew, John Anthony. This money had come from a timber harvest on William and Emma's Banner Mountain property. Mark characterized the $278,000 as an "outstanding loan" from William and Emma, which Mark had a "legal obligation" to repay. Although John Anthony was responsible for a portion of the obligation, Mark testified that, if his nephew did not repay that portion of the loan, Mark would be obligated for the entire $278,000. Mark denied owing his parents any other money.

Armed with evidence he contends showed William and Emma "systematically divested themselves of substantially all assets which would have been available to satisfy [plaintiff's] judgment," by transferring them to family members, plaintiff sought an order to apply certain identified items of property to the satisfaction of his judgment (a "turnover" order under § 708.205).[4] These items included the $278,000 obligation of Mark to William and Emma, to which Mark testified in his judgment debtor examination, and the $35,000 obligation of Mark to his parents, which William identified in his judgment debtor examination. Plaintiff also moved to obtain attorney fees and costs for Mark's failure to disclose on his memorandum of garnishee the two loans from his parents. (§ 701.030, subd. (d) [if a third person does not provide complete information on the garnishee's memorandum, he or she may be required to pay the costs and reasonable attorney fees incurred in a proceeding to obtain the information].)[5]

---

[4]Section 708.205 states: "(a) Except as provided in subdivision (b), at the conclusion of a proceeding pursuant to this article, the court may order the judgment debtor's interest in the property in the possession or under the control of the judgment debtor or the third person or a debt owed by the third person to the judgment debtor to be applied toward the satisfaction of the money judgment if the property is not exempt from enforcement of a money judgment. Such an order creates a lien on the property or debt.

"(b) If a third person examined pursuant to Section 708.120 claims an interest in the property adverse to the judgment debtor or denies the debt and the court does not determine the matter as provided in subdivision (a) of Section 708.180, the court may not order the property or debt to be applied toward the satisfaction of the money judgment but may make an order pursuant to subdivision (c) or (d) of Section 708.180 forbidding transfer or payment to the extent authorized by that section."

[5]Section 701.030 provides in pertinent part: "(d) Except as provided in subdivisions (e) and (f), if a third person does not give the levying officer a garnishee's memorandum within the time provided in subdivision (a) or does not provide complete information, the third person may, in the court's discretion, be required to pay the costs and reasonable attorney's fees incurred in any proceedings to obtain the information required in the garnishee's memorandum.

"(e) Notwithstanding subdivision (a), when the levy is made upon a deposit account or upon property in a safe deposit box, the financial institution need not give a garnishee's memorandum to the levying officer if the financial institution fully complies with the levy

Mark opposed the application for a turnover order on the ground, among others, that "[a] creditor's suit [under section 708.210 et seq.] is preferable to a supplementary hearing [available under section 708.180] because of the complexities [of the case]." He opposed the motion for attorney fees and costs on the grounds that (1) although William testified he loaned $35,000 to Mark prior to August 26, 1991, there was no evidence he did so before July 18 (when Mark signed his memorandum of garnishee under oath) and, thus, there was no proof Mark's memorandum of garnishee (which denied any indebtedness) was untruthful when signed, and (2) because the $278,000 was not a loan, Mark's failure to disclose it on the memorandum of garnishee did not warrant sanctions.

At the section 708.180 hearing on plaintiff's application for a turnover order,[6] Mark testified that, although he feels he has a "moral obligation" to repay the amounts to his parents, neither the $35,000 nor the $278,000 he shared with John Anthony were "loans." According to Mark, he received both sums from William in return for amounts Mark had advanced to, or on behalf of, his brother John Paul and John Paul's radio station business, Cardinal Communications (Cardinal).

Specifically, Mark testified he had loaned $191,520 to John Paul for Cardinal, and loaned an additional $60,000 to prevent foreclosure on John Paul's house. Mark acknowledged these loans were never documented, and no interest was paid on them. Mark also testified he had expended another $128,000 on Cardinal's behalf as the guarantor of the business's equipment leases. According to Mark, John Paul agreed to repay Mark with proceeds from the radio station or, if Cardinal was not successful, with proceeds from its one hard asset, the right to harvest timber on William and Emma's property at Banner Mountain.[7] When the timber was harvested in 1989, $278,000 of the timber proceeds were paid jointly to Mark and his parents.

and, if a garnishee's memorandum is required, the garnishee's memorandum need provide information with respect only to property which is carried on the records available at the office or branch where the levy is made.

"(f) Notwithstanding subdivision (a), the third person need not give a garnishee's memorandum to the levying officer if both of the following conditions are satisfied:

"(1) The third person has delivered to the levying officer all of the property sought to be levied upon.

"(2) The third person has paid to the levying officer the amount due at the time of levy on any obligation to the judgment debtor that was levied upon and there is no additional amount that thereafter will become payable on the obligation levied upon."

[6] Oral testimony was taken at the second hearing on plaintiff's application for a turnover order. The first hearing was held on January 13, 1992, at which the trial court ordered certain items of property belonging to William and Emma applied to plaintiff's debt and scheduled a two-day court trial to resolve issues related to the "contested" items, including Mark's alleged debts of $278,000 and $35,000.

[7] Mark asserts that, in 1985 or 1986, William and Emma assigned to Cardinal the right to harvest timber on their Banner Mountain property, thus his receipt of proceeds from the

Mark claimed he received $200,000 from those proceeds as repayment of the principal amounts he advanced on Cardinal's behalf. This testimony conflicted with Mark's assertion at his judgment debtor examination that William and Emma loaned Mark and John Anthony $278,000 from the Banner Mountain timber proceeds, that Mark and John Anthony invested the money in a business venture, and that Mark's responsibility to repay the loan is a legal obligation for which he and John Anthony are jointly liable.

Mark admitted receiving $35,000 from William in 1991, and using it to purchase real estate with John Anthony in Arizona. Although Mark acknowledged he owed a "moral obligation" to William "to account for any money that [Mark] invested in Arizona" (in his words: "Yeah, I owe my father for everything he's done for this. Yeah. Yes. I owe him."), he then testified he received the $35,000, together with the $200,000 from timber proceeds in 1989, as repayment of the advances he made for the benefit of John Paul's radio station. Confronted at the section 708.180 hearing with the apparent conflict between Mark's sworn memorandum of garnishee, in which he stated he owed his parents no money, and William's testimony that he loaned Mark $35,000, Mark insisted his father's testimony "dovetails in with everything I'm saying today." Mark explained: "[William] said that he expected me to repay an obligation. And I'll take care of my father. And I'll pay him back double. I try and take care of him. I didn't—like I said, I don't really expect my father—did not really expect my father to have to pay that. But he did. I owe him the money. Now, if that's wrong for me to say that I owe him that money and more, it is. Now, if he wants to say I owe him interest, I owe him more than the 278,000. He can say that. That's his opinion. That's his opinion. And I believe from what I hear there and what I'm telling you now that it dovetails in there."

In June 1992, the trial court issued its written ruling on plaintiff's application for an order to apply Mark's alleged $35,000 and $278,000 obligations to the satisfaction of plaintiff's judgment.

Regarding the $35,000, the court found: "1) These funds represent a loan from William and Emma to Mark; 2) Mark admits a moral obligation to repay them without admitting a legal obligation (he claims funds are an off-set against monies loaned to his brother John Paye) therefore in essence denying the existence of the debt within the meaning of section 708.180; 3) Mark's denial is not consistent with [William's] examination testimony that Mark owes him the money; and 4) no reasonable explanation for a good faith

---

1989 timber harvest was not a receipt of money from his parents. However, it is unclear from testimony at the hearing whether this putative assignment of logging rights was ever consummated.

denial of the debt has been presented. To the extent the debt is denied, the Court finds that denial to not have been made in good faith, and an order pursuant to section 708.205(a) is GRANTED as to this loan." Consistent with these findings, the court ordered Mark's $35,000 debt to William and Emma applied to the satisfaction of plaintiff's judgment.

The trial court reached a different result with respect to the alleged $278,000 loan. Although it believed "the entire transaction involving the $278,000.00 strongly suggests a fraudulent transfer," the court nonetheless declined to find that Mark's denial of a $278,000 debt to his parents was made in bad faith, and concluded that the parties' respective interests in this sum should be determined in a creditor's suit. Pending resolution of a creditor's suit, the court enjoined Mark from transferring or disposing of the $278,000.

The court granted plaintiff's request for attorney fees and costs, stating: "As to the claim for attorney's fees against [Mark] . . . for the bad faith failure to provide complete information in his Memorandum of Garnishee, plaintiff is awarded $2,500.00 in attorney's fees and costs . . . . The court finds sufficient evidence that said Memorandum was signed subsequent to the $35,000.00 loan."

Mark moved for reconsideration (§ 1008) of the attorney fees and costs award based upon "different facts," i.e., a bank copy of a $35,000 check payable to Wendy Paye, Mark's wife, written by William on August 12, 1991, and cashed on August 13, after Mark completed the memorandum of garnishee. Although plaintiff previously had subpoenaed William's bank records, neither side introduced the check into evidence at the section 708.180 hearing. The trial court criticized Mark for having "gambled that he could persuade the court the $35,000 was out of reach of plaintiffs by not producing the check his mother gave him and, having lost that argument, now brings that same evidence to prove the time and effort plaintiff spent trying to prove the money belonged to the judgment debtors was not sanctionable because he didn't owe it when they served the garnishee's memorandum." The court ruled that Mark's explanation for not producing the check earlier was insufficient and denied his motion for reconsideration. This appeal followed.

## DISCUSSION

### I

Mark contends the trial court erred in concluding that his denial of the alleged $35,000 debt was not made in good faith; consequently, the court

should not have determined the existence of his $35,000 debt to William and Emma in a section 708.180 summary proceeding. Instead, the court should have required plaintiff to bring a creditor's suit (§ 708.210 et seq.) to determine the existence of the debt.

In addressing this contention, we first examine the laws governing enforcement of a civil judgment against assets not actually in the judgment debtor's possession.

Once scattered throughout the Code of Civil Procedure and other codes, statutes covering the enforcement of civil judgments were organized in 1982 into a comprehensive scheme, the Enforcement of Judgments Law, which appears in sections 680.010 through 724.260. (See generally, Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 2 (The Rutter Group 1994) ¶ 6:1 et seq.)

Under both the former law and the current statutory scheme, when a third person possesses or controls property in which a judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to apply the property or debt to satisfaction of the creditor's money judgment. This action commonly is referred to as a creditor's suit. (§ 708.210 et seq.)[8]

However, a creditor's suit is not the only means available to a judgment creditor seeking to apply to the judgment any debt owed by a third person to the judgment debtor or any property of the judgment debtor possessed by or under the control of a third person. California Law Revision Commission comments to the 1982 amendments to provisions governing creditor's suits state: "Article 3 (commencing with Section 708.210) authorizes the judgment creditor to bring suit against third persons indebted to or in possession of property of the judgment debtor. It is anticipated, however, that less expensive and less cumbersome enforcement procedures will be used in the normal case and that the creditor's suit will be used where the third person has failed to perform the duties of a garnishee (see Section 701.010 et seq.), where the court does not determine disputed ownership of the property or the existence of the debt under Section 708.180, or where for some other reason the judgment creditor believes that the third person will not cooperate. . . ."

[8]Section 708.210 provides: "If a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment."

This section supersedes the first portion of the first sentence of former section 720. (See Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 708.210 (1983 ed.) pp. 517-518.)

(Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., preceding § 708.210, *supra*, p. 517.)

As noted by the California Law Revision Commission, a "less cumbersome" enforcement procedure is embodied in section 708.180.[9] When a judgment creditor alleges that a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor in an amount exceeding $250, and the third person claims an interest in the property adverse to the judgment debtor or denies the debt, section 708.180 authorizes the trial court to (1) decide whether the third person has made a good faith claim to an interest in the property adverse to the judgment debtor or has made a good faith denial of a debt to the judgment debtor, and (2) if the third person's claim is not made in good faith, to determine the interests in the property or the existence of the debt.

---

[9]Section 708.180 provides: "(a) Subject to subdivision (b), if a third person examined pursuant to Section 708.120 claims an interest in the property adverse to the judgment debtor or denies the debt, the court may, if the judgment creditor so requests, determine the interests in the property or the existence of the debt. Such a determination is conclusive as to the parties to the proceeding and the third person, but an appeal may be taken from the determination in the manner provided for appeals from the court in which the proceeding takes place. The court may grant a continuance for a reasonable time for discovery proceedings, the production of evidence, or other preparation for the hearing.

"(b) The court may not make the determination provided in subdivision (a) if the third person's claim is made in good faith and any of the following conditions is satisfied:

"(1) The court would not be a proper court for the trial of an independent civil action (including a creditor's suit) for the determination of the interests in the property or the existence of the debt, and the third person objects to the determination of the matter under subdivision (a).

"(2) At the time an order for examination pursuant to Section 708.120 is served on the third person a civil action (including a creditor's suit) is pending with respect to the interests in the property or the existence of the debt.

"(3) The court determines that the interests in the property or the existence of the debt should be determined in a creditor's suit.

"(c) Upon application of the judgment creditor made ex parte, the court may make an order forbidding transfer of the property to the judgment debtor or payment of the debt to the judgment debtor until the interests in the property or the existence of the debt is determined pursuant to subdivision (a) or until a creditor's suit may be commenced and an order obtained pursuant to Section 708.240. An undertaking may be required in the discretion of the court. The court may modify or vacate the order at any time with or without a hearing on such terms as are just.

"(d) Upon application of the judgment creditor upon noticed motion, the court may, if it determines that the judgment debtor probably owns an interest in the property or that the debt probably is owed to the judgment debtor, make an order forbidding the transfer or other disposition of the property to any person or forbidding payment of the debt until the interests in the property or the existence of the debt is determined pursuant to subdivision (a) or until a creditor's suit may be commenced and an order obtained pursuant to Section 708.240. The court shall require the judgment creditor to furnish an undertaking as provided in Section 529. The court may modify or vacate the order at any time after notice and hearing on such terms as are just."

These determinations are conclusive as to the parties to the proceeding and the third person.

The provisions of section 708.180 depart from those of its predecessor, former section 719. Under the plain meaning of the language in former section 719,[10] once the third person asserted an interest in the property adverse to the judgment creditor or denied owing any property to the judgment debtor, the trial court was powerless to act under that statute with respect to the disputed property, and a judgment creditor intent on collecting sums allegedly owed to the judgment debtor by a third person was limited to proceeding against the third person via a creditor's suit.

Lacking express authority under former section 719 to evaluate whether a third person's claim to property of the judgment debtor had merit, courts struggled with how to give relief to a judgment creditor under the statute when it appeared the third person's claim had been made in bad faith, while, at the same time, not trampling on the third person's due process right to a full adjudication prior to removal of property in his or her possession.

In *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771 [13 Cal.Rptr. 872], the Court of Appeal engrafted what has been characterized as a "good faith" exception to the language of former section 719. (Legis. committee com., Deering's Ann. Code Civ. Proc., § 708.180 (1983 ed.) p. 512.) The *Thomas* court held that, because proceedings under that statute were "summary" (in contrast to an independent creditor's suit), they could not be used to deprive a third person transferee of a judgment debtor of his or her property without due process of law "[u]nless it must be said that [the third person's] claims are frivolous and a mere sham . . . ." (192 Cal.App.2d at p. 777.)

In this respect, the holding in *Thomas* was similar to that in *Parker* v. *Page* (1869) 38 Cal. 522 , which construed an earlier statutory scheme (§§ 243 and 244 of the Practice Act enacted in 1851) addressing a judgment creditor's ability to reach property of the judgment debtor in the possession of a third person.[11] Pointing to the plain language of section 244 of the Practice Act (see fn. 11, *ante*), the third person in *Parker* argued: "when it is alleged that

---

[10]Former Section 719 provided: "The judge or referee may order any property of the judgment debtor, not exempt from execution, in the hands of such debtor, or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment; but no such order can be made as to money or property in the hands of any other person or claimed to be due from him to the judgment debtor, if such person claims an interest in the property adverse to the judgment debtor or denies the debt." (Stats. 1951, ch. 1737, § 114, p. 4127.)

[11]Section 243 of the Practice Act provided: "The Judge or referee may order any property of the judgment debtor, not exempt from execution, in the hands of such debtor or any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment;

the garnishee is indebted to the judgment debtor, or has in his hands property belonging to him, if the fact is denied, the *only* order which the Court can properly make, is one authorizing [a creditor's suit]." (38 Cal.3d at pp. 525-526, italics in original.) The Supreme Court held: "This is undoubtedly true, if the denial be made in good faith. The obvious purpose of Section 244 was to entitle the garnishee, who in good faith, denied that he had any property of the judgment debtor, or was any wise indebted to him, to the benefit of a trial in a regular action with the proper parties . . . . In such cases, it was not intended to subject the garnishee to a trial of the disputed fact in a summary proceeding . . . . [W]hen it is evident that the garnishee is acting in bad faith in denying his indebtedness to the judgment debtor, and makes the denial only in form and for purposes of vexation and delay, the referee may treat it as fraudulent, and disregard it. The denial of the debt or the adverse claim to the property, contemplated in Section 244, is a claim or denial *in good faith*, and not a mere fraudulent sham, resorted to for purposes of delay. To permit a fraudulent garnishee for the mere purpose of delay, and who, evidently, is acting in bad faith, to avail himself of Section 244, in order to drive the judgment creditor to an action against him, would be to pervert the true purpose of that section, and make it a shield for fraud, instead of an instrument of justice." (*Id.*, at pp. 526-527, italics in original.)[12]

■ Enactment of section 708.180 was intended to resolve the dilemma posed by the plain language of section 719, pursuant to which "the court lacked the power to determine the interest in property in the hands of a third person or whether the third person was indebted to the judgment debtor when the third person claimed an interest in the property adverse to the

---

except, that the earnings of the debtor for his personal services, at any time within thirty days next preceding the order, shall not be so applied, when it shall be made to appear by the debtor's affidavit or otherwise that such earnings are necessary for the use of a family supported wholly or partly by his labor." (Stats. 1851, ch. 5, § 243, p. 91.)

Section 244 of the Practice Act provided: "If it appear that a person or corporation, alleged to have property of the judgment debtor or indebted to him, claims an interest in the property adverse to him, or denies the debt, the Court or Judge may authorize, by an order made to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt; and the Court or Judge may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the Judge granting the same, or the Court in which the action is brought, at any time, upon such terms as may be just." (Stats. 1851, ch. 5, § 244, p. 91.)

[12]*Parker* was criticized in *Coffman* v. *Cobra Mfg. Co.* (9th Cir. 1954) 214 F.2d 489, at pages 492-493. *Coffman* construed former section 719 to require that, once a reasonable prima facie denial of the debt is raised by the third person, the court must abandon the summary proceeding in favor of a creditor's suit unless it appears "beyond a reasonable doubt that [the third person's] contentions are so unbelievable, fantastic, or so palpably inconsistent that they can be held to be a sham throughout"; only then, the third person's "right to a classical plenary hearing can be denied him." (214 F.2d at p. 493.)

judgment debtor or denied the debt." (Legis. committee com., Deering's Ann. Code Civ. Proc., § 708.180 (1983 ed.) p. 512.) "The provision of [section 708.180] requiring the third person's claim to be in good faith codifies the rule of *Thomas* v. *Thomas*[, *supra*, 192 Cal.App.2d 771.]" (*Ibid.*, italics added.)

Thus, despite a third person's denial of an obligation owed to the judgment debtor, section 708.180 expressly authorizes the trial court, in a hearing outside the framework of a creditor's suit, to determine whether the third person in fact owes money to a judgment debtor, unless the court finds the third person's denial of the debt is made in good faith and any of the conditions specified in section 708.180, subdivision (b)(1), (b)(2), and (b)(3) is satisfied. (See fn. 9, *ante*.) The third person is afforded due process in a section 708.180 hearing by its provision giving the court discretion to grant a continuance for discovery, the production of evidence, or other preparation for the hearing. (§ 708.180, subd. (a).)

We turn now to Mark's contentions of error.

## II

■ According to Mark, as applied to the circumstances of this case, both the language of section 708.180 "and case law interpreting its predecessor" limit the scope of a section 708.180 hearing to a determination whether the third person who is alleged to owe a debt to the judgment debtor "could offer (*not* prove by a preponderance of the evidence) a good-faith explanation for his denial [of the alleged debt]." In his view, the trial court may not weigh the credibility of evidence presented at a section 708.180 hearing, other than to determine whether the explanation of the third party appears to be "a blatant sham." Rather, the "issue of the credibility of the one claim against the other [i.e., the judgment creditor's allegation that the third person owes a debt to the judgment debtor versus the third person's denial of the alleged debt] is for the finder of fact in the creditor's action . . . ."

In other words, Mark contends that, in order to compel a creditor's suit, the third person need only "present any 'reasonable explanation for a good faith denial of the debt' " and that the judge who hears the 708.180 proceeding may not "resolve any dispute over good faith itself . . . ." In effect, he asserts that prima facie evidence of good faith is sufficient regardless of what other evidence is presented in the section 708.180 proceeding.[13]

Mark misconstrues the statute. In explicitly authorizing the trial court to determine whether the third person's denial of an alleged debt to the

---

[13]Prima facie evidence is that which will support a ruling in favor of its proponent if no controverting evidence is presented. (*People* v. *Bell* (1989) 49 Cal.3d 502, 554 [262 Cal.Rptr.

judgment debtor has been made in good faith, section 780.180 necessarily envisions that the court will assess the credibility of the third person's claim in light of other evidence presented concerning the alleged debt. (Cf. *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 998 [103 Cal.Rptr. 498] ["Good or bad faith is a question of fact in each case . . . guided by the evidentiary material presented to [the trier of fact]"].) "An individual's personal good faith is a concept of his own mind and inner spirit and, therefore, may not be conclusively determined by his protestations alone. The existence of . . . good faith as a substantive fact, therefore, necessitates an examination and evaluation of external manifestations as well. [It] may be evidenced by facts and surrounding circumstances existing prior and subsequent to the acts [at issue]." (*Doyle* v. *Gordon* (1954) 158 N.Y.S.2d 248, 260.) Otherwise, the third person could defeat the purpose of the statutory scheme simply by presenting any facially plausible explanation for denying the debt, regardless of what weaknesses become evident when the explanation is scrutinized together with other evidence received by the court.[14]

■ Mark also is wrong when he suggests the third person who has denied a debt to a judgment creditor does not bear the burden to establish the denial was made in good faith. Although section 708.180 does not expressly assign the burden of demonstrating the good faith of the third person's claim,[15] the statute is structured in a way that the third person's good faith denial of an alleged debt, coupled with the existence of any of the other conditions specified in subdivision (b), constitutes a defense to the plaintiff's request to determine the existence of the debt by way of the summary proceeding permitted by section 708.180. Thus, the statute contemplates that the third person has the burden to prove his or her denial of a debt was made in good faith. (Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence . . . of which is

1, 778 P.2d 129], (conc. opn. of Kaufman, J.); 9 Wigmore on Evidence (Chadbourn rev. 1981) Sufficiency of Evidence, § 2494, pp. 379, 381, 387; Black's Law Dict. (5th ed. 1979) p. 1071.) It may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences. (*People* v. *Towler* (1982) 31 Cal.3d 105, 115 [181 Cal.Rptr. 391, 641 P.2d 1253].)

[14]Contrary to Mark's claim, the trial court did not decline to resolve disputes over the credibility of witnesses. Mark's citation to the record as support for his assertion is simply incorrect.

[15]In its silence on the burden of establishing good faith, section 708.180 easily is distinguished from those statutes discussed in *Barajas* v. *USA Petroleum Corp.* (1986) 184 Cal.App.3d 974, 987-988 [229 Cal.Rptr. 513], to which Mark directs our attention. *Barajas* concerned a discussion of whether the plaintiff's pretrial settlement with certain defendants was made "in good faith." The statute governing judicial determinations of the good faith of such pretrial settlements is section 877.6, subdivision (d), which provides: "The party asserting the lack of good faith shall have the burden of proof on that issue."

essential to the claim for relief . . . that he is asserting."].) Moreover, the plain syntax of subdivision (b)—"if the third person's claim is made in good faith"—indicates the Legislature intended the third person to bear the burden of establishing good faith. This allocation is understandable because evidence that a person acted in good faith is peculiarly within the knowledge of the person claiming to so have acted, who likewise has the greater motivation to bring those facts to the attention of the court. (Cf. *Morris* v. *Williams* (1967) 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].)

Accordingly, once the judgment creditor has presented prima facie evidence of the existence of a debt by the third person to the judgment debtor, the burden shifts to the third person to establish by a preponderance of the evidence that his or her denial of the debt is made in good faith. (Evid. Code, § 115 [". . . Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence"]; *Weiner* v. *Fleischman* (1991) 54 Cal.3d 476, 483 [286 Cal.Rptr. 40, 816 P.2d 892] ["The general rule in this state is that '[i]ssues of fact in civil cases are determined by a preponderance of testimony.' "].)

█ Mark suggests that, to establish good faith, he merely needed to show that his denial of the debt was not " 'blatantly fraudulent.' " We disagree. This low threshold of proof is inconsistent with the statutory scheme, which favors utilization of the enforcement procedure set forth in section 708.180 to determine the existence of a third person's debt to the judgment debtor. (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., preceding § 708.210, *supra*, p. 517.)[16] As we have noted, permitting the third person to satisfy his or her burden of establishing good faith simply by presenting any facially plausible explanation for denying the debt, e.g., showing the denial of the debt is not " 'blatantly fraudulent,' " would defeat the purpose of the statute, which is to preclude a third person who has acted in bad faith from delaying the matter by compelling the judgment creditor to resort to a creditor's suit to determine the existence of the debt.

Had the Legislature intended the third person need show only that the denial of a debt is not patently frivolous or an obvious sham, it could have so specified. Instead, the statutory scheme requires proof by a preponderance of the evidence that the denial was made in "good faith." (§ 708.180, subd. (b); Evid. Code, § 115.)

█ "Good faith is that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being

---

[16]For example, section 708.180, subdivision (b)(3) contemplates that, even if the third person establishes his or her denial of a debt was made in good faith, the court nevertheless has discretion to conclude that the existence of the debt should be determined in the section 708.180 proceeding rather than in a creditor's suit. (See fn. 9, *ante*.)

faithful to one's duty or obligation. . . . It is the opposite of fraud and bad faith." (*People* v. *Lonergan* (1990) 219 Cal.App.3d 82, 90 [267 Cal.Rptr. 887] [internal quotation marks and citations omitted]; see also Webster's New Internat. Dict. (3d ed. 1970) p. 978 [good faith is "a state of mind indicating honesty and lawfulness of purpose: . . . absence of fraud, deceit, collusion . . . ."]; Black's Law Dict. (6th ed. 1990) p. 623 [good faith "encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage . . . . Honesty of intention . . . ."].)

█ Evidence that the third person's denial of a debt owing to the judgment debtor is made in good faith can take many forms. For example, good faith could be shown by evidence that the third person genuinely believed the debt never existed or, if there was a debt, by evidence of the third person's sincere belief that the obligation to the judgment debtor was dependent on a condition yet unfulfilled; that payment on the debt had been excused by the occurrence of some event subsequent to the obligation or by the judgment debtor's failure to perform; that the obligation was incurred through mistake or fraud; that an honest dispute exists as to the amount of the debt; or that the debt already had been satisfied, in whole or in part. Such evidence, if credible, would preclude a determination of the debt in a summary procedure under section 780.180 (assuming any of the other conditions specified in subdivision (b) is satisfied), and would require that the issue of the debt be resolved in a creditor's action.

█ Applying these principles to the facts of this case, and adhering to the rule that an appellate court views the record in the light most favorable to the prevailing party and draws all reasonable inferences in favor of the judgment (*Cardenas* v. *Mission Industries* (1991) 226 Cal.App.3d 952, 958-959 [277 Cal.Rptr. 247]), we conclude the trial court did not err in determining that Mark's denial of the $35,000 debt to William and Emma was not made in good faith.[17]

William's testimony under oath at his judgment debtor's examination that he loaned Mark $35,000 is prima facie evidence of Mark's obligation to the judgment debtor and satisfies the first prerequisite to the operation of section 780.180. Once Mark denied the debt, the court was authorized, at plaintiff's request, to evaluate whether Mark's denial of the $35,000 debt was made in good faith and, if not, to determine conclusively if the debt exists.

To determine the issue of good faith, the trial court was not required to accept Mark's proffered explanation that he received the money from his

[17]To the extent the trial court imposed burdens of proof inconsistent with this opinion, the error worked in Mark's favor. Hence, it is not reasonably probable the court would have reached a result more favorable to him had the court applied the correct burdens of proof.

father not as a loan, but in repayment for Mark's having advanced money to his brother John Paul's radio business, because this explanation contradicted the sworn statement of William that Mark owed his parents $35,000, and Mark had a self interest in disavowing the debt. (*Hill* v. *Thomas* (1955) 135 Cal.App.2d 672, 681 [288 P.2d 157] ["Among the relevant considerations [in assessing a witness's claim] are the character of the evidence, the motives of the witness, his interest in the result of the case, the manner in which he testifies, and the contradictions appearing in the evidence."].)

After John Paul defaulted on his promissory note and William and Emma answered plaintiff's complaint to enforce their guarantee, they transferred to Mark, for no consideration, 725 acres of timber property on Banner Mountain. In the same time frame, William transferred 600 acres of farm land in Oklahoma to his grandson John Anthony, for no consideration and transferred $278,000 to Mark and John Anthony. After judgment was entered in April 1991 in favor of plaintiff against William and Emma on their guarantee, William loaned $70,000 to John Anthony sometime between April and August 1991, and thereafter transferred $35,000 to Mark. Based upon the timing of the $35,000 transfer and the other asset transfers William made to family members without consideration, the trial court reasonably could infer that Mark's claim the $35,000 transfer related to a series of transactions with other parties, including John Paul, Cardinal, and their respective creditors—and thus was not a loan—constituted an attempt by Mark to put William and Emma's assets out of plaintiff's reach. Moreover, in light of William's unambiguous description of the $35,000 as a loan, the trial court reasonably could discount Mark's denial of the debt. In fact, at the section 708.180 hearing Mark contradicted his testimony at the judgment debtor examination by admitting he was "morally obligated" to repay the $35,000 to William.

Considering the totality of the circumstances, including the timing of the transfer, William's testimony that the $35,000 was a loan to Mark, and the inconsistencies in Mark's explanation for receiving the money, the trial court reasonably could conclude that Mark's testimony was not credible. Hence, the court was entitled to find that Mark's denial of the $35,000 debt was not made in good faith.

Contrary to Mark's claim, the trial court's ruling concerning the $278,000 transfer is not necessarily inconsistent with the court's finding that Mark's denial of the $35,000 was not made in good faith. The fact Mark's explanation for receipt of the $35,000 did not differ substantially from his explanation for receipt of the $278,000 did not require the trial court to reach the

same conclusion concerning the two transactions.[18] Evidence regarding the transactions was not identical inasmuch as the court had the benefit of William's unqualified testimony that the $35,000 was a loan to Mark, but had no such evidence regarding the $278,000 transfer. Given the differences in evidence concerning the respective amounts, it was not improper for the court to determine that Mark's denial of the $35,000 debt was not made in good faith, but to conclude that the validity of the Mark's explanation for the $278,000 should be resolved in a creditor's suit.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The orders are affirmed.

Nicholson, J., and Raye, J., concurred.

A petition for a rehearing was denied March 10, 1995.

---

[18]Overlooking the appropriate rule of appellate review (*Cardenas* v. *Mission Industries*, *supra*, 226 Cal.App.3d at pp. 958-959 [an appellate court views the record in the light most favorable to the judgment and draws all reasonable inferences in favor of thereof]), Mark contends the trial court made erroneous findings of fact concerning both the sums of money he advanced to Cardinal and the $278,000 proceeds from the timber harvest. The contention has no merit. For example, his claim that the court incorrectly found Mark received $278,000, rather than $200,000, in proceeds from the timber harvest ignores his testimony in the judgment debtor examination that (1) the entire $278,000 was applied to Mark's business venture with his nephew, and (2) Mark was legally obligated to repay the entire amount to his parents.

*See footnote, *ante*, page 265.