Filed 5/13/21  Hwang v. Shah CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| SHIRLEY S. HWANG,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAY C. SHAH,<br><br>        Defendant;<br><br>CHANDRAKANT K. SHAH,<br><br>        Objector and Appellant. | A160309<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF-18-516411) |

In this action by Shirley S. Hwang to enforce a criminal restitution order and civil judgment against defendant Jay C. Shah, Hwang examined Shah's father, third party Chandrakant K. Shah (appellant or C.K. Shah). Thereafter she obtained an order pursuant to Code of Civil Procedure[1] section 708.180 determining that C.K. Shah owes his son a debt against which Hwang could satisfy her judgment and restitution order. On appeal, C.K. Shah contends the trial court's finding that his denial of the debt was not made in good faith is not supported by substantial evidence. He also contends, among other things, that the court applied improper standards in

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

reaching that finding and violated his right to due process and the Uniform Voidable Transfer Act (UVTA) (Civ. Code, § 3439 et seq.). We find no reversable error and shall affirm the order.

## Background

In prior criminal proceedings it was determined that in 2009, Jay Shah and coconspirators stole title to three condominiums owned by Hwang in the new Rincon Hill development in San Francisco and fraudulently secured mortgages on the properties for $2.2 million. (*People v. Shah* (A138475, July 8, 2016) [nonpub opn.].) Jay Shah absconded with the majority of the mortgage proceeds, which he used to, among other things, redeem from foreclosure a 106–acre ranch property located in Santa Clara County known as the Quimby Ranch. (*Ibid.*)

Following his arrest, Jay Shah transferred title to the Quimby Ranch to his parents, C.K. and Mrudula Shah. In late 2010, the San Francisco District Attorney sought an order enjoining transfer or sale of the property. Jay Shah's parents opposed the proposed injunction and submitted a verified claim of ownership of the Quimby Ranch based on his post-arrest transfer of title to them. In November 2010, the court issued an injunction prohibiting Jay Shah, C.K. Shah, Mrudula Shah, or anyone acting in concert with them, from "transfer[ring] any interest, by sale, pledge, grant of security interest, or otherwise dispos[ing] of" the Quimby Ranch. The court rejected the parents' claim that they had taken the Quimby Ranch as bona fide purchasers.

In March 2012, Jay Shah was convicted of 13 felonies arising out of the fraudulent loans secured by Hwang's properties.[2] In March 2013, he was

---

[2] Jay Shah was convicted of conspiracy to commit money laundering, identity theft, grand theft, money laundering, burglary, and filing false deeds and deeds of trust. (*People v. Shah, supra,* A138475 [nonpub. opn.].)

sentenced to 20 years in prison and ordered to pay a $14.1 million criminal fine.[3] (*People v. Shah, supra,* A138475 [nonpub. opn.].)

In October 2013, C.K. and Mrudula Shah recorded in Santa Clara County five deeds of trust (the Trust Deeds) encumbering real property they purported to own or control, including the Quimby ranch. The Trust Deeds identify Jay Shah as the beneficiary and state that they are recorded for the purpose of securing "payment of the sum of $7,250,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by trustor payable to the order of the beneficiary, and extensions or renewals thereof."

In August 2015, the superior court issued an order for victim restitution in Jay Shah's criminal case in favor of Hwang in the amount of $311,767.05, bearing interest at 10 percent per annum from the date of sentencing.

In October 2016, C.K. and Mrudula Shah recorded five substitutions of trustee and full reconveyances purporting to cancel the Trust Deeds and reconvey each of the encumbered properties from Shah back to his parents.

In 2011, shortly before Shah's conviction in the criminal case, Hwang had commenced a civil action for damages against Shah. In August 2018, the superior court awarded Hwang $3,869,560 in damages, including $1,600,000 in punitive damages. In awarding punitive damages, the court rejected Shah's claimed indigence. The court explained, "The court finds that the network of entities that defendant developed in his criminal scheme to conceal and distribute the proceeds of his criminal enterprise in *People v.*

---

[3] In July 2016, Jay Shah's criminal conviction was affirmed with modification as to the sentence by Division Two of this court. (*People v. Shah, supra,* A138475 [nonpub. opn.].)

3

*Shah* was still in use after his conviction . . . . The historic and present movement of real property and funds between defendant, his family members and associates and the failure to provide timely and relevant documents leads the court to suspect that the failure was meant to conceal the defendant's real net worth."[4]

In November 2018, Hwang commenced the present proceeding to enforce her victim restitution award entered in Jay Shah's criminal case. In those proceedings she filed an application for an order to examine C.K. Shah pursuant to section 708.120. The petition alleged that the Trust Deeds establish a prima facie case that C.K. Shah owes his son a debt or has possession or control of property in which Jay Shah had an interest. The application was granted and C.K. Shah appeared for examination.

At the examination, C.K. Shah explained that the Trust Deeds were part of a rushed estate planning effort undertaken by him and his wife when he received a cancer diagnosis. He claimed that the Trust Deeds were recorded based on advice received from a criminal attorney. Later, however, they consulted an estate-planning attorney who told them recording the Trust Deeds was the wrong approach. The attorney coordinated with Jay Shah to have the reconveyances recorded.

Following the completed examination, Hwang filed a motion pursuant to section 708.180, subdivision (a), asking the superior court to determine that C.K. Shah owed a debt to his son. C.K. Shah opposed the motion arguing that the deeds never represented an actual debt owed to Jay Shah and were recorded as a poorly conceived estate plan.

---

[4] The judgment entered against Jay Shah and in favor of Hwang in the civil lawsuit is pending appeal before Division Three of this court (No. A156674).

4

In February 2020, the court issued an order finding that C.K. Shah owes his son Jay Shah $7.25 million. At the hearing on Hwang's motion, the court found that C.K. Shah's claim that there was never a debt was not "made in good faith in light of the factual history in these cases." The court noted that its finding was based on the totality of the circumstances, including C.K. Shah's testimony that "he believed that he was going to die and so he did a foolish estate-planning device by signing a note and deed of trust to his son, but then realized that it was in error from the very beginning, and so he asked his son's cooperation to undo the security instruments." In its written order, the court confirmed that the four Trust Deeds evidenced a $7.25 million debt owed by C.K. Shah to Jay Shah. The court found "[b]ased on the plain language of the Trust Deeds, . . . that [C.]K. Shah's claim that he never owed a debt to Jay Shah is not made in good faith. This debt continued to exist at the time Plaintiff's judgment against Jay Shah matured." The court found further that "Jay Shah's attempt to cancel this debt by recording a substitution of trustee and full reconveyance in October 2016 as to each encumbered property . . . violated the actual and constructive fraud prongs of the [UVTA]." Finally, the court concluded, "Because Jay Shah and [C.]K. Shah acted in concert to violate the UVTA and cancel the $7.25 million debt at a time Jay Shah owed plaintiff victim restitution, the court finds it proper to enter judgment against [C.]K. Shah, who was the intended beneficiary of the reconveyances in the amount necessary to satisfy . . . the victim restitution awarded to her in [the criminal case] and the civil judgment entered in her favor."

Appellant filed a timely notice of appeal of the court's order.[5]

## Discussion

An order for restitution in a criminal case may be enforced in the same manner as a civil judgment. (Pen. Code, § 1202.4, subd. (i).) The statutes covering the enforcement of civil judgments are organized in the Enforcement of Judgments Law, which appears in sections 680.010 through 724.260. (*Evans v. Paye* (1995) 32 Cal.App.4th 265, 276 (*Evans*).)) As relevant here, sections 708.120, 708.180 and 708.205 permit a judgment creditor to enforce a judgment against a third party who owes a debt to the judgment debtor. Under section 708.120, if a judgment creditor makes a prima facie showing that a third party holds property of, or owes a debt to, the judgment debtor, the third party may be ordered to appear in court to answer questions about the property or debt. Under section 708.180, subdivision (a), if the third party denies the debt, the creditor may ask the court to determine the existence of the debt.[6] Section 780.180, subdivision (b) restricts the court's authority if among other things, the third party's denial of the debt is made in good faith.[7] Finally, section 708.205, subdivision (a) provides that "at the

---

[5] Although the order indicates the court's intent to enter a judgment in this action for Hwang against C.K. Shah in the amount of $3,725,116.56 plus interest, no judgment has yet been entered. The order determining the debt is made appealable by section 708.180, subdivision (a), which reads in relevant part: "The determination is conclusive as to the parties to the proceeding and the third person, but an appeal may be taken from the determination."

[6] Section 708.180, subdivision (a) provides: "Subject to subdivision (b), if a third person examined pursuant to Section 708.120 claims an interest in the property adverse to the judgment debtor or denies the debt, the court may, if the judgment creditor so requests, determine the interests in the property or the existence of the debt. . . ."

[7] Section 708.180, subdivision (b) provides: "The court may not make the determination provided in subdivision (a) if the third person's claim is

6

conclusion of a proceeding pursuant to this article, the court may order . . . a debt owed by the third person to the judgment debtor to be applied toward the satisfaction of the money judgment if the property is not exempt from enforcement of a money judgment. Such an order creates a lien on the property or debt."

In summary, if the judgment creditor makes a prima facie showing that the third party owes money to the judgment debtor, the burden shifts to the third party to show by a preponderance of the evidence that he denies the debt in good faith. (*Evans, supra*, 32 Cal.App.4th at p. 282.) If the trial court finds that the third party's claim of good faith is credible, the debt's existence is then determined by way of a creditor's suit instead of through the summary procedure supplied by sections 708.120 and 708.180. (*Evans, supra*, at p. 283.) If the trial court rejects the third party's claim of good faith, it may then order that the third party's debt to the judgment debtor be applied toward satisfying the money judgment, thereby creating a lien on the debt. (§ 708.205, subd. (a).)

We review the trial court's factual finding that C.K. Shah's denial of the debt was not made in good faith under the substantial evidence standard. (*Evans, supra,* 32 Cal.App.4th at p. 285, fn. 18.) Insofar as his arguments

---

made in good faith and any of the following conditions is satisfied: [¶] (1) The court would not be a proper court for the trial of an independent civil action (including a creditor's suit) for the determination of the interests in the property or the existence of the debt, and the third person objects to the determination of the matter under subdivision (a). [¶] (2) At the time an order for examination pursuant to Section 708.120 is served on the third person a civil action (including a creditor's suit) is pending with respect to the interests in the property or the existence of the debt. [¶] (3) The court determines that the interests in the property or the existence of the debt should be determined in a creditor's suit."

7

require statutory interpretation or application of other "legal principles" we apply a de novo standard of review.

Initially, we conclude that the record provides ample support for the court's factual finding that C.K. Shah's denial of the debt was not made in a good faith. Contrary to C.K. Shah's argument, the court was not required to find that the denial was "frivolous and a sham with no substantial evidence in support." In *Evans, supra*, 32 Cal.App.4th at page 282, the court rejected a similar argument that, to establish good faith, the third party merely needs to show that his denial of the debt was not "blatantly fraudulent." The court explained, "This low threshold of proof is inconsistent with the statutory scheme, which favors utilization of the enforcement procedure set forth in section 708.180 to determine the existence of a third person's debt to the judgment debtor. [Citation.] As we have noted, permitting the third person to satisfy his or burden of establishing good faith simply by presenting any facially plausible explanation for denying the debt, e.g., showing the denial of the debt is not ' "blatantly fraudulent," ' would defeat the purpose of the statute, which is to preclude a third person who has acted in bad faith from delaying the matter by compelling the judgment creditor to resort to a creditor's suit to determine the existence of the debt. [¶] Had the Legislature intended the third person need show only that the denial of a debt is not patently frivolous or an obvious sham, it could have so specified. Instead, the statutory scheme requires proof by a preponderance of the evidence that the denial was made in 'good faith.' [Citations.] [¶] 'Good faith is that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. It is the opposite of fraud and bad faith.' " (*Id.* at pp. 282–283.) Good faith may be "shown by evidence that the third person genuinely believed the debt never

8

existed or, if there was a debt, by evidence of the third person's sincere belief that the obligation to the judgment debtor was dependent on a condition yet unfulfilled; that payment on the debt had been excused by the occurrence of some event subsequent to the obligation or by the judgment debtor's failure to perform; that the obligation was incurred through mistake or fraud; that an honest dispute exists as to the amount of the debt; or that the debt had already been satisfied, in whole or in part." (*Id*. at p. 283.) Section 780.180 "necessarily envisions that the court will assess the credibility of the third person's claim in light of other evidence presented concerning the alleged debt. [Citation.] 'An individual's personal good faith is a concept of his own mind and inner spirit and, therefore, may not be conclusively determined by his protestations alone. The existence of . . . good faith as a substantive fact, therefore, necessitates an examination and evaluation of external manifestations as well. [It] may be evidenced by facts and surrounding circumstances existing prior and subsequent to the acts [at issue].' " (*Id*. at p. 281.)

Here, while appellant emphasizes the plausibility of his explanation for the Trust Deeds and subsequent recordation of the reconveyances offered at his examination, he failed to present any evidence at the section 708.180 hearing in support of his self-serving testimony. He emphasizes in his appellate briefs that the Trust Deeds were recorded on the bad advice of a criminal law attorney and that the reconveyances were accomplished on the advice of an attorney, "who is a seasoned certified specialist in estate planning" but at the hearing below, he failed to provide a declaration from either attorney. During his examination, C.K. Shah denied having much information about the reconveyances and suggested that Hwang's attorney "should talk to [his] estate attorney." However, when Hwang's attorney asked

for permission to speak with his estate planning attorney, C.K. Shah said, "Well, let me talk to him."

C.K. Shah's testimony at his examination that the Trust Deeds were an attempt at estate planning is further undermined by his admission at that time that he did not record deeds of trust for the half of his estate that was intended for Jay Shah's sister or any of his other heirs. He also offered no explanation in his examination as to why he consulted a criminal law attorney for estate planning advice when the properties were already held in a revocable trust.

C.K. Shah's credibility was also impeached by the fact that he recorded the deed of trust encumbering the Quimby Ranch in violation of the court's injunction. His claim that he did not then "recall" that there was an injunction on the property is not credible in light of his participation in those proceedings. The timing of the reconveyances is also suspicious. As the trial court observed, the reconveyances were recorded two weeks after Jay Shah filed a declaration in the civil action asserting that he was indigent and could not afford to retain legal counsel.

Finally, whether the Trust Deeds evidence a debt or an estate plan must be considered in the context of the family's history of property transfers. Division Two's opinion affirming Jay Shah's criminal conviction notes that "Shah and his parents would transfer property back and forth to allow them to borrow money for projects." (*People v. Shah, supra,* A138475 [nonpub. opn.].) Similarly, the trial judge adjudicating the civil action recognized the family has a history of shifting ownership of property to conceal assets. Given

10

the above, the court reasonably rejected the explanation proffered by C.K. Shah as not credible.[8]

The remaining challenges asserted by C.K. Shah to the court's order are also without merit. He argues that for the reasons discussed below, "it is *not possible* for a court to find that his denial of this 'debt' lacked good faith, even if the court were to suspect that there was some kind of a conspiracy by a convicted felon to commit fraud." We disagree.

Appellant contends the court applied the "wrong legal standard for taking judicial notice of a document" in concluding that the Trust Deeds established the existence of the debt as a matter of law. He argues the court erred by accepting the truth of the recitals found on the Trust Deeds without considering his testimony rebutting those recitals and establishing that there was never a debt owed to Jay Shah. The court did not, however, as C.K. Shah suggests fail to consider his testimony. To the contrary, the court detailed his testimony but found it lacking in credibility and insufficient to rebut the recitals found in the recorded instruments.

C.K. Shah contends the recitals on the Trust Deeds were insufficient to establish the existence of the debt because the recitals do not reflect the terms and conditions of the promissory note. C.K. Shah acknowledges that a promissory note once existed but it was not produced in response to Hwang's subpoena because it "doesn't exist anymore." On appeal, C.K. Shah questions whether the note may have "included an essential term that nothing was due or owing to the nominal payee until the condition precedent was fulfilled of the death of the maker" and argues that without proof of the terms of the

---

[8] In light of this conclusion, we need not reach the alternative argument advanced by Hwang that C.K. Shah's testimony was barred by the parol evidence rule.

loan, it is "impossible to find that a current debt was all due and payable now." This argument ignores that Hwang was only required to establish a prima facie case in support of the existence of the debt and that C.K. Shah had the burden of proof in denying the debt.

C.K. Shah also argues that the recorded reconveyances establish his good-faith denial as a matter of law. His argument is both legally and factually wrong. First, the recording of the reconveyances did not necessarily release the debt pursuant to Civil Code section 1541.[9] "[T]he legal effect of reconveyance is only to clear the title of record." (*Snider v. Basinger* (1976) 61 Cal.App.3d 819, 823.) The reconveyances recorded in this case did not expressly purport to release a debt. Nor could they have been intended to release the debt because C.K. Shah testified that there was no debt to be released. Thus, the sole import of the reconveyances was to release Jay Shah's security interest in the property. It did not erase the debt.

C.K. Shah also argues that the court's order effectively voided the reconveyances in violation of the UVTA. The court's order, however, did not expressly or implicitly void the reconveyances. To the contrary, at the hearing, the court expressly stated that it did not believe it had the authority to void the reconveyances and Hwang's attorney confirmed that voiding the reconveyances was not necessary to grant the requested relief. We agree that Hwang was not required to commence a new civil action against C.K. Shah for the sole purpose of setting aside the reconveyances. The court was authorized under section 708.180 to determine the existence of a debt, irrespective of any security therefor.

---

[9] Civil Code section 1541 reads: "An obligation is extinguished by a release therefrom given to the debtor or the released party by the creditor or releasing party, upon a new consideration, or in writing, with or without new consideration."

12

Next, C.K. Shah argues that the court's order voided the reconveyances in violation of his right to due process. As discussed above, the court did not void the reconveyances. Moreover, the summary procedure to determine the existence of the debt did not violate C.K. Shah's right to due process. In *Evans, supra*, 32 Cal.App.4th at page 280, the court rejected a similar argument, explaining, "despite a third person's denial of an obligation owed to the judgment debtor, section 708.180 expressly authorizes the trial court, in a hearing outside the framework of a creditor's suit, to determine whether the third person in fact owes money to a judgment debtor . . . . The third person is afforded due process in a section 708.180 hearing by its provision giving the court discretion to grant a continuance for discovery, the production of evidence, or other preparation for the hearing."[10]

---

[10] Section 708.180 expressly authorizes the court to "grant a continuance for a reasonable time for discovery proceedings, the production of evidence, or other preparation for the hearing." In the trial court, C.K. Shah opposed Hwang's motion noting, without elaboration, "if the court is unwilling to deny the motion, the third party requests that . . . the court allow discovery and put this matter over until discovery is completed and a full trial can be held." At the hearing, his attorney reiterated that is was improper to deny the motion "without the opportunity for the third party to do further exploratory discovery" but failed to identify what specific discovery was needed or press for a ruling on his ability to conduct discovery. On appeal, C.K. Shah contends the court erred by refusing to grant his request for discovery. It was, however, clearly within the court's discretion to deny the broad request for discovery. The fact, asserted for the first time on appeal, that he was apparently unable to gather a declaration from Jay Shah in the time required to oppose the motion may have been grounds for a continuance but is irrelevant to his request for discovery. C.K. Shah's assertion, again made for the first time on appeal, that he should have been permitted to propound discovery on Hwang is similarly without merit insofar as he fails to identify the relevance of any possible discovery propounded on Hwang to the existence of his debt to his son.

Finally, C.K. Shah argues that the court's order is void because the court lacks authority to enter a judgment against a nonparty. C.K. Shah notes that the written order indicates the court's intent to enter a judgment against C.K. Shah personally for the amount of the civil judgment and the restitution order. The order finds that the reconveyances were recorded in violation of the fraud provisions of the UVTA (Civ. Code, §§ 3439.04, 3439.05).[11] It concludes, "Because Jay Shah and [C.]K. Shah acted in concert to violate the UVTA and cancel the $7.25 million debt at a time Jay Shah owed plaintiff victim restitution, the court finds it proper to enter judgment against [C.]K. Shah, who was the intended beneficiary of the reconveyances in the amount necessary to satisfy plaintiff's outstanding claim, pursuant to Civil Code section 3439.08(b)(l)(A)."[12] As discussed above, however, the court

---

[11] Civil Code section 3439.04, subdivision (a) reads in relevant part: "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . [¶] (A) . . . [¶] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Civil Code section 3439.05, subdivision (a) reads: "A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

[12] Civil Code section 3439.08, subdivision (b) reads in relevant part: "To the extent a transfer is avoidable in an action by a creditor under paragraph (1) of subdivision (a) of Section 3439.07, the following rules apply: [¶] (1) Except as otherwise provided in this section, the creditor may recover judgment for the . . . the amount necessary to satisfy the creditor's claim . . . .

14

has yet to enter a judgment in this action. The right to the judgment Hwang seeks is being actively litigated between the parties before the trial court. We decline to provide an advisory opinion regarding the merit of any judgment that may subsequently be entered.[13]

## Disposition

The order granting Hwang's motion to determine the existence of a debt under section 708.180 is affirmed. Hwang shall recover her costs on appeal.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

---

The judgment may be entered against the following: [¶] (A) The first transferee of the asset or the person for whose benefit the transfer was made." Civil Code section 3439.07, subdivision (a) provides: "In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain: [¶] (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. . . ."

[13] Hwang's motion to strike the portions of appellant's reply brief that raise new arguments is denied as unnecessary. Appellant's contentions regarding the "one-action" and "security-first" rules, raised at pages 25 to 30 of the reply brief, were not previously asserted in either the trial court or in appellant's opening brief. These untimely contentions may not be and have not been considered. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276.)