Filed 6/6/14  3H Corp. v. Integrated Technologies CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| 3H CORPORATION,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>INTEGRATED TECHNOLOGIES CONSULTING, INC.;<br><br>     Defendant;<br><br>PAMELA REYES et al.,<br><br>     Appellants. | B248626<br><br>(Los Angeles County<br> Super. Ct. No. LS021448) |

APPEAL from an order of the Superior Court of Los Angeles County. Frank J. Johnson, Judge.  Affirmed.

Law Offices of Bennett A. Rheingold and Bennett A. Rheingold for Appellant Philip Reyes.

Law Office of Michael P. Ribons and Michael P. Ribons for Plaintiff and Respondent.

_____

Philip Reyes appeals from the trial court order that he turn over to judgment creditor 3H Corporation money his corporation borrowed from the wife of judgment debtor Allen Kurtz. We affirm the order.

## FACTS AND PROCEDURAL HISTORY

In March 2011 an arbitrator determined that Integrated Technologies Consulting, Inc. (ITC), and its alter ego, company president Allen Kurtz, breached their fiduciary duty to 3H Corporation by diverting money owed to 3H in connection with their joint project to design and build freeway call boxes for Los Angeles County. The arbitrator awarded 3H more than $1.2 million in compensatory damages, costs, and interest, along with punitive damages of $300,000 and $50,000 respectively against ITC and Kurtz. Pamela Reyes, who owned an equity interest in, and was an officer of, ITC, was also a party to the arbitration, but the arbitrator found she was not liable. The arbitrator also enjoined Kurtz from selling, encumbering, or transferring his house or other assets that he owned or controlled.

In May 2011, the trial court issued a temporary restraining order (TRO) prohibiting Allen Kurtz and his wife Debra from selling, encumbering, or transferring their house or other assets they owned or controlled.[1] On November 9, 2011, the trial court entered a default judgment confirming the arbitration award, including a permanent injunction that ordered Allen Kurtz and "all those acting in concert with or under [his] direction" from selling, encumbering, or transferring their homes or other assets within their control.

3H later learned that Debra Kurtz had loaned $19,400 to Proguard Covers Inc. on November 14, 2010, while the arbitration hearing was still underway. Proguard is a telemarketer of abrasive wheels used for machining and other similar tasks. Its president

---

[1] The appellate record does not include the TRO or any points and authorities that might have been submitted in connection with it. Instead, the TRO is referenced in the turnover order being appealed. The basis for the TRO does not appear in the record and is not explained by the parties' appellate briefs.

and sole officer is Philip Reyes, the brother of ITC co-owner and officer Pam Reyes. The loan, which was documented by a promissory note, was interest free and was to be repaid within two years.

On March 14, 2011, Debra Kurtz paid $20,000 for 20 percent of Proguard's shares of stock. Those shares gave her no voting rights, paid no dividends, and could not be sold without Proguard's approval. On October 31, 2011, Debra Kurtz extended the term of her loan to Proguard for an additional two years, without receiving anything in return. This occurred while 3H's motion to confirm the arbitration award as a default judgment was pending.

In October 2012, 3H conducted judgment debtor's examinations of Philip and Pamela Reyes pursuant to Code of Civil Procedure section 708.120, which applies to persons who possess or control property in which a judgment debtor has an interest, or who owe money to a judgment debtor. Philip Reyes testified that he needed the loan because Proguard was struggling and he wanted more capital, but he admitted that he was still paying himself a regular monthly salary of $3,200 while also paying Pamela Reyes a monthly salary in an unknown amount. He also had two employees who worked on commission, and despite some monthly fluctuations in sales, kept an inventory of 10,000 abrasive wheels on hand.

As for the loan extension, Philip Reyes testified that Debra Kurtz offered it after he told her that Proguard was struggling and that he did not want to default on the loan. When asked why Debra Kurtz would extend her interest free loan another two years, Reyes said, "I don't know, I didn't get into that. I don't remember."

Based in part on the results of those judgment debtor examinations, 3H filed a motion asking the court to order Proguard to turn over the proceeds of the $19,400 loan made by Debra Kurtz.[2]

At the March 2013 hearing on 3H's turnover motion, the trial court found that the loan extension violated its May 2011 TRO. It also found that the persons who "own and

---

[2] It is unclear from the record whether other discovery or judgment debtor's examinations were conducted or, if so, whether their results were before the trial court.

run" Proguard had been aware of that order, and that the "Reyes Family [was] drawing significant funds from Proguard, Inc. each and every month." It therefore ordered Proguard, "through its president Philip Reyes," to turn over the proceeds of the $19,400 loan from Debra Kurtz because the loan came due in December 2012.

Philip Reyes appeals from that order, contending that the trial court erred because: (1) the loan term had been extended and repayment was not due until November 2014; (2) Debra Kurtz did not violate the May 2011 TRO by extending the loan's due date; and (3) he could only be ordered to pay upon a showing the money was in his possession or under his control, and the evidence showed that he had used the money to buy inventory for Proguard, meaning there was no identifiable sum of money to turn over.[3]

## DISCUSSION

1.   *Applicable Law and Standard of Review*

Under prior law, a judgment creditor could enforce his judgment by executing on property held by a third party as to which the judgment debtor had some interest, or on a debt owed by a third party to the judgment debtor. (Former Code Civ. Proc., § 719.)[4] However, if the third party asserted an interest in the property adverse to the judgment creditor, or denied owing money to the debtor, the judgment creditor had to bring a creditor's suit against the third party to resolve any competing claims to the property or

---

[3]   3H contends that Philip Reyes lacks standing to appeal because the turnover order was directed at Proguard, not him. We disagree. The turnover order was directed to Philip Reyes in his capacity as president of Proguard. 3H later sought a contempt citation against him for his failure to produce the funds. The notice of appeal states that Philip was also appealing from a contempt order, so we presume such an order was granted. Although Philip Reyes has not raised the contempt order in his appellate briefs, it is clear that he is a party aggrieved by the turnover order and therefore has standing to appeal.

Pamela Reyes was also named in the notice of appeal, but Philip's appellate briefs raise no issues as to her, and we deem her appeal abandoned.

[4]   All further undesignated section references are to the Code of Civil Procedure.

4

determine whether the third party in fact owed money to the judgment debtor. (Former § 719; *Evans v. Paye* (1995) 32 Cal.App.4th 265, 278 (*Evans*).)

Effective 1983, the Legislature eliminated former section 719 and adopted a quicker way to resolve these issues. Now, if a judgment creditor makes a prima facie showing that a third party holds property of, or owes a debt to, the judgment debtor, the third party may be ordered to appear in court to answer questions about the property or debt. The judgment creditor's supporting declaration may be based on information and belief. (§ 708.120, subd. (a); *Evans, supra,* 32 Cal.App.4th at pp. 279-280.)[5]

If the third party denies the debt, the creditor may ask the court to determine the existence of the debt. The trial court may continue the matter for a reasonable time for discovery proceedings, the production of evidence, or other hearing preparation. (§ 708.180, subd. (a).) The court may not determine the debt's existence if: the third party's denial of the debt is made in good faith; a creditor's suit (§ 708.210) is pending; or the trial court determines that the matter is best resolved in a separate creditor's suit (§ 708.180, subd. (b)(1)-(3)).

Once the judgment creditor make a prima facie showing that the third party owes money to the judgment debtor, the burden shifts to the third party to show by a preponderance of the evidence that he denies the debt in good faith. (*Evans, supra,* 32 Cal.App.4th at p. 282.) "Good faith" means an honest statement of mind, no intent to defraud, and the absence of deceit and collusion. (*Id.* at pp. 282-283.) Good faith may be "shown by evidence that the third person genuinely believed the debt never existed or, if there was a debt, by evidence of the third person's sincere belief that the obligation to the judgment debtor was dependent on a condition yet unfulfilled; that payment on the debt had been excused by the occurrence of some event subsequent to the obligation or by the judgment debtor's failure to perform; that the obligation was incurred through mistake or fraud; that an honest dispute exists as to the amount of the debt; or that the debt had already been satisfied, in whole or in part." (*Id.* at p. 283.)

---

**5** Even though sections 708.120 and 708.180 apply to both property and debts, for ease of reference we will hereafter mention only debts.

If the trial court finds that the third party's claim of good faith is credible, the debt's existence is then determined by way of a creditor's suit instead of through the summary procedure supplied by sections 708.120 and 708.180. (*Evans, supra,* 32 Cal.App.4th at p. 283.) If the trial court rejects the third party's claim of good faith, it may then order that the third party's debt to the judgment debtor be applied toward satisfying the money judgment, thereby creating a lien on the debt. (§ 708.205, subd. (a).)

We review the trial court's ruling under the substantial evidence standard, and therefore view the record and draw all reasonable inferences in the light most favorable to the judgment. (*Evans, supra,* 32 Cal.App.4th at p. 285, fn. 18.)[6]

2.    *Substantial Evidence Supports a Finding the Loan Extension Was Not Made in Good Faith*

Philip Reyes's appellate argument boils down to the following: (1) the loan to Proguard was proper because it was made in mid-November 2010, before the May 2011 TRO that prohibited Allen and Debra Kurtz from selling, encumbering, or transferring their house or other assets within their control; (2) the two-year loan extension made in October 2011 did not violate the TRO because Debra Kurtz maintained all of her rights arising from the original promissory note, meaning that no rights to an asset were transferred by the extension; (3) as a result, the March 2013 turnover order was improper because the loan was not due until November 2014.

In short, Philip Reyes does not dispute the existence of Proguard's debt to Debra Kurtz. Instead, he denies Proguard's obligation to repay the debt at the time of the turnover order by relying on the two-year extension from Debra Kurtz. If Reyes had shown good faith in connection with these transactions, he would be correct. (*Evans, supra,* 32 Cal.App.4th at p. 283 [good faith may be shown by evidence of the third

---

**6**    Both parties contend – incorrectly – that the abuse of discretion standard of review governs here.

person's sincere belief that the obligation to the judgment debtor was dependent on a condition yet unfulfilled].)

However, Philip Reyes does not acknowledge or discuss the good faith component of sections 708.120 and 708.180 and has not analyzed the issue in light of the substantial evidence standard of review.[7] We therefore deem the issue waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) We alternatively conclude on the merits that the order was supported by substantial evidence that Philip Reyes did not act in good faith when he denied Proguard's immediate obligation to repay the loan.

The trial court did not expressly find that Philip Reyes's reliance on the loan extension was in bad faith. Instead, it found that Kurtz violated the TRO by making the extension, that the persons who owned and ran Proguard were aware of that order, and that the Reyes Family was drawing significant sums of money from Proguard each month. However Philip did not designate the reporter's transcript of the hearing on the turnover motion as part of the appellate record and, under well-settled rules of appellate review, we therefore presume the absence of error from a silent record and assume that the trial court made all necessary findings to support its order. (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1352, fn. 7.) Our review of the record shows substantial evidence that the loan extension violated the TRO and that Philip Reyes's reliance on that extension in order to refuse payment was not in good faith.

Whether a third party who borrowed money from a judgment debtor did so in good faith turns on the circumstances of the transaction, including the relationships

---

[7]    3H's appellate brief does not expressly refer to the notion of good faith. However, it contends that the trial court's order was proper based on all the circumstances and evidence before the trial court, including the close ties between the parties, Proguard's knowledge of the TRO, and the fact that the loan was interest free and that Proguard paid nothing for the extension. Combined, 3H contends, this showed that the loan was intended to delay or thwart enforcement of the judgment. We construe this as a contention that Philip Reyes's reliance on the loan extension was not made in good faith.

between the parties and the timing of the loans. (*Evans, supra,* 32 Cal.App.4th at p. 284 [finding of bad faith warranted by fact that land was transferred and loans made to family members while litigation was pending and after judgment was entered].)

We begin with the relationships between the various players. Allen Kurtz was the president and primary shareholder of ITC. Pam Reyes was an equity owner of ITC and was a corporate officer. She also managed the books and performed other accounting tasks for Proguard, which belonged to her brother, Philip Reyes. Philip Reyes invested $100,000 in ITC. Although he claimed he lost that investment, he also admitted receiving two checks from ITC totaling $140,000. Pam and Philip Reyes lived in the same house. Philip Reyes was Proguard's only officer, and Pam Reyes helped set up the company. Proguard used ITC's address when it was formed. This evidence shows that the parties and their businesses have much in common. It also suggests that they act in concert. Furthermore, Philip Reyes's receipt of $40,000 more than his supposedly lost investment in ITC suggests that ITC was parking funds with him.

We next examine the timing of the loan and the extension. The loan was made while the arbitration was underway in November 2010. On March 14, 2011, Debra Kurtz paid $20,000 for a very restricted class of 20 percent of Proguard's shares of stock. This occurred about two weeks before the arbitrator issued his decision. However, the arbitrator's decision refers to a February hearing on the issue of punitive damages and the existence of an interlocutory award, leading to the inference that the stock purchase occurred after ITC and the Kurtzes learned they had lost or likely were to lose the case. On October 31, 2011, while 3H's motion to confirm the arbitration award as a default judgment was pending, Debra Kurtz extended the term of her loan to Proguard for an additional two years. The timing of these transactions suggests they were motivated by fear of losing, and then having lost, the arbitration proceeding.

Next we consider the terms of the loan – which was interest free – and the extension – for which Proguard paid nothing. Philip Reyes contends that delaying the limitations period to bring suit for breach of the promissory note supplied consideration for the extension. We reject that contention. At the time the extension was made the

8

loan was not yet due and there was no cause of action as to which an applicable limitations period could have began to run.

Distilled, the evidence and its reasonable inferences showed that: Philip Reyes had invested money in ITC, the company partly owned by his sister; Philip Reyes later received checks from ITC in a combined amount greater than his investment; Proguard and ITC shared the same address; Debra Kurtz, wife of ITC owner Allen Kurtz, made an interest free loan to Proguard in the middle of the ITC-3H arbitration; Debra Kurtz then bought a 20 percent share of Proguard after learning of the arbitrator's decision, but had no right to sell her shares without Proguard's approval; Debra Kurtz extended the loan's term by another two years for no charge while the petition to confirm the arbitration award as a judgment was pending.

Based on the intertwining relationships of these parties and the timing and circumstances of the loan and the extension, the trial court was justified in finding that the original loan, even if not in violation of any court order, was a sham and was made in order to thwart enforcement of the judgment by 3H. The same holds true for the loan extension.

We reject Philip Reyes's contention that the loan extension did not violate the May 2011 TRO because it did not involve the transfer or encumbrance of any assets. Reyes contends that an encumbrance applies to only real property. We disagree. For instance, in divorce proceedings a spouse is not allowed to "sell, convey, or *encumber*" community personal property such as furniture and clothing. (Fam. Code, § 1100, subd. (c), italics added.) Under the Commercial Code, personal property subject to an execution lien remains subject to the lien even if it has been transferred or encumbered. (Code of Civ. Proc., § 697.740.)

Under the analogous Uniform Fraudulent Transfer Act (Civ. Code, §§ 3439-3439.12), the term "transfer" applies to "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." (Civ. Code, § 3439.01, subd. (i).) The term "transfer" in this

9

section is derived from the federal Bankruptcy Code, which has similar language (11 U.S.C. § 101(54)(D)), and which Congress intended to be all inclusive and which is to be construed as broadly as possible, "including a transfer of possession, custody, or control, even if there is no transfer of title." (*In re Lemley Estate Business Trust* (N.D. Texas 1986) 65 B.R. 185, 189.)

With these authorities in mind, we conclude that the loan extension qualified as both an encumbrance and a transfer. The TRO was clearly intended to prevent Debra Kurtz from transferring assets in order to thwart enforcement of 3H's judgment. It would undermine the trial court's order to allow judgment debtors to whom money is owed by third parties to gratuitously and in bad faith extend the loan term indefinitely solely to prevent enforcement of a judgment. Under the circumstances here, we conclude that the extension acted like a new transfer or encumbrance because it allowed Proguard to hold on even longer to money that it accepted as part of a sham loan designed to keep those funds out of 3H's hands.

3.     *There Was Substantial Evidence That Proguard Had the Loan Funds*

An application for a turnover order must describe the property in the possession or control of a third party, or the third party's debt to the judgment debtor, "in a manner reasonably adequate to permit it to be identified." (§ 708.120, subd. (c).) If the judgment creditor prevails, the trial court may order the third party to turnover either the property in his possession or control or the debt owed to the judgment debtor. (§ 708.205, subd. (a).) Philip Reyes contends the turnover order must be reversed because the evidence showed that he used all his capital to buy inventory and there was no showing that he possessed adequate funds to pay the debt.

Philip Reyes did not testify that all of Proguard's capital was tied up in inventory or that the company was currently struggling to make ends meet. In fact, he produced no evidence concerning Proguard's current financial condition. The trial court's order focused on the fact that Philip and Pam Reyes were both drawing significant funds from Proguard every month. This finding is supported by testimony that Philip paid himself

10

$3,200 each month and paid his sister a monthly salary in an unknown amount.  He also testified that Proguard kept an inventory of 10,000 abrasive wheels on hand, suggesting that the company was in fact thriving.  Based on this evidence, the trial court was free to conclude that Proguard had sufficient funds on hand to repay the loan from Debra Kurtz.

## DISPOSITION

The turnover order is affirmed.  Respondent 3H shall recover its costs on appeal.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.

11