Filed 5/22/23  LSI Corporation v. Gunnam CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LSI CORPORATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KIRAN GUNNAM et al.,<br><br>Defendants and Respondents. | H049521<br>(Santa Clara County<br>Super. Ct. No. 19-CV-358852) |
| LSI CORPORATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANNAPURNA YARLAGADDA et al.,<br><br>Defendants and Appellants. | H049523<br>(Santa Clara County<br>Super. Ct. No. 19-CV-358852) |

LSI Corporation (LSI) sued its former employee Kiran Gunnam for breach of contract, alleging that he violated a confidentiality agreement when he disclosed LSI's proprietary information without authorization.  LSI also sued Gunnam's wife, Annapurna Yarlagadda, for intentional interference with contract and inducement to breach contract, alleging that she was aware of Gunnam's confidentiality agreement and induced him to breach it.

Gunnam and Yarlagadda filed a special motion to strike pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute.[2] They argued that LSI's complaint arises in its entirety from protected petitioning activity—namely, a 2018 patent and copyright infringement lawsuit against LSI filed in federal district court by TexasLDPC, a company founded and run by Yarlagadda—and that LSI could not demonstrate a probability of prevailing on the merits.

The trial court granted the motion as to the breach of contract cause of action against Gunnam, determining that the claims arise from protected activity and that LSI had failed to demonstrate the requisite minimal merit as to the damages element. However, it denied the motion as to the causes of action pleaded against Yarlagadda on the ground that the claims do not arise from protected activity. LSI and Yarlagadda appealed.

We determine that LSI's causes of action against both Gunnam and Yarlagadda arise from protected activity because the alleged injury-producing acts were undertaken preparatory to, and in anticipation of, litigation. We also determine that LSI carried its burden of demonstrating that each challenged claim in its breach of contract cause of action against Gunnam has the requisite minimal merit. With respect to its claims against Yarlagadda, however, we conclude that LSI has failed to carry that burden.

Accordingly, we reverse.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

[2] An anti-SLAPP motion is a "special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773-774.)

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Gunnam's employment with LSI

According to its complaint, LSI is a Santa Clara-based corporation that designs semiconductor and software solutions for accelerated storage and networking in data centers, mobile networks, and client computing.

In January 2008, LSI hired Gunnam as a development design engineer. Prior to joining LSI, Gunnam was a Ph.D. student and employee at Texas A&M University, focusing on low-density parity check code decoders (LDPC), an error-correcting technology used in connection with the transmission of digital information that allows electronic devices to transmit digital information at higher speeds and with greater accuracy.

As a condition of his employment with LSI, Gunnam signed an employee invention and confidential information agreement (agreement) on January 21, 2008. Among other things, the agreement provided: "Confidentiality. Except as authorized by the Company in writing, I agree to keep confidential and not to disclose, or make any use of, either during or subsequent to my employment, all inventions, trade secrets, proprietary or confidential information, works of authorship or proprietary matter that relate to the actual or demonstrably anticipated business, research, development, product, services, devices or activity of the Company, any of its clients, customers, consultants, licensees or affiliates . . . or the Company's employees, which I may produce, obtain or otherwise acquire during the course of my employment."

The agreement set forth examples of what constitutes proprietary information, and provided that Gunnam would not engage in any other employment or activity relating to LSI's business or conflicting with his obligations to the company. In addition, it required Gunnam to "promptly surrender and deliver to the Company all records, drawings, documents and data, in electronic or any other storage media or form pertaining to or containing any Proprietary Information as well as all tangible property of the Company

3

that I have in my custody or control," upon termination with LSI, and expressly provided that Gunnam would "not retain copies of any Proprietary Information, whether in tangible or electronic form." It also stated that Gunnam would not disclose to LSI any confidential information belonging to anyone else.

### B. Alleged breaches

On March 8, 2011, Gunnam informed LSI that he was resigning, effective March 18. According to LSI, in the last few months prior to his departure from the company, including in March 2011, Gunnam downloaded and retained LSI's confidential and proprietary material. Specifically, LSI alleges that Gunnam accessed the company's electronic file-sharing platform and data repository—the "TWiki server"—which stores documents both within the scope of, and unrelated to, Gunnam's employment. Gunnam could access the TWiki server by using a unique user ID and, according to LSI, accessed the server on March 2, 2011, to view technical documents related to LSI technology referred to as the McLaren and Spyder read channel architectures (McLaren documents). LSI also alleges that, before leaving the company, Gunnam printed and retained multiple e-mails containing LSI's confidential information.

LSI contends that Gunnam committed additional breaches of the agreement after his departure from the company. Specifically, it claims that on December 18, 2017, the confidential and proprietary information related to the design and development of semiconductor products, which Gunnam improperly retained, was posted on the publicly accessible website www.scribd.com (scribd documents). That confidential and proprietary information included documents that Gunnam authored, or which he had access to, while at LSI, such as the McLaren documents. The same month those documents were uploaded to scribd, an employee at a company called TexasLDPC Inc. (TexasLDPC), discovered them after conducting a web search for "evidence of how LSI and its parent Broadcom were using LDPC decoders in hard disk drive controller chips." LSI contends that Gunnam directly or indirectly caused the scribd documents to be

4

posted publicly to provide a "clean path" for their subsequent use by TexasLDPC in a patent infringement lawsuit against LSI.

TexasLDPC is a Texas company, created in 2015 by Gunnam's wife, Yarlagadda, that develops and licenses intellectual property relating to error-correction coding for electronic devices, and designs and markets LDPC solutions for use in various technologies under the name Symbyon Systems. Yarlagadda created TexasLDPC ostensibly to commercialize patents owned by Texas A&M relating to LDPC technology which incorporates Gunnam's Ph.D. work. Consistent with that, the company negotiated an exclusive license to Texas A&M patents and copyrights relating to Gunnam's LDPC decoder designs.

LSI alleges that Gunnam also provided its confidential information directly or indirectly to TexasLDPC, Yarlagadda, and Fish & Richardson, a law firm representing TexasLDPC, in violation of the agreement. According to LSI, Gunnam testified that he printed copies of the e-mails containing LSI's confidential information and provided them in October 2018 to Fish & Richardson. LSI argues that Gunnam gave the e-mails to Fish & Richardson "to assist Fish in suing on behalf of TexasLDPC."

### C. Delaware lawsuit

In December 2018, TexasLDPC sued LSI and its parent company Broadcom for patent infringement in federal district court in Delaware (Delaware lawsuit).[3] It filed its first amended complaint in the Delaware lawsuit in January 2019, in which it added certain claims and defendants, and alleged that LSI's LDPC-containing products infringed six patents and four copyrights exclusively licensed to TexasLDPC.

LSI contends that TexasLDPC's complaint in the Delaware lawsuit relied on the scribd documents and the e-mails with confidential information that Gunnam had provided to Fish & Richardson and TexasLDPC. According to LSI, the Delaware

---

[3] LSI is incorporated in Delaware.

complaint also relied on e-mails Gunnam had sent to LSI in 2012, 2013 and 2014, which he designated as "LSI Confidential," in which he accused LSI of infringing on Texas A&M's patents and described features of the LDPC decoder he had developed at LSI.

### D. Complaint

LSI filed the complaint in this action on November 18, 2019, naming Gunnam and Yarlagadda as defendants (complaint). As to Gunnam, the complaint asserts one cause of action for breach of contract and one cause of action for breach of covenant of good faith and fair dealing. The breach of contract cause of action specifically alleges that Gunnam breached his obligations under the agreement "by using and/or disclosing, and/or causing others to use and/or disclose, LSI's confidential and proprietary information without LSI's authorization," as alleged elsewhere in the complaint, and that LSI was harmed and will continue to suffer damage as a result. The breach of covenant of good faith and fair dealing cause of action similarly alleges that Gunnam's breach unfairly interfered with LSI's right to receive the benefits of the agreement.

As to Yarlagadda, the complaint asserts one cause of action for intentional interference with contract and one cause of action for inducement to breach contract. The intentional interference with contract cause of action specifically alleges that Yarlagadda knew or should have known that Gunnam entered into the agreement and agreed to protect LSI's confidential and proprietary information from unauthorized use and disclosure. Further, it alleges that Yarlagadda engaged in actions designed to induce a breach or disruption of the agreement with knowledge that it was substantially certain that a breach or disruption of the agreement would result. Lastly, it alleges that, as a result of Yarlagadda's actions, Gunnam breached his obligations under the agreement, the agreement was disrupted, and LSI suffered harm as a result. The inducement to the breach of contract cause of action similarly alleges that Yarlagadda knew or should have known that Gunnam entered into the agreement and agreed to protect LSI's confidential and proprietary information from unauthorized use and disclosure, and that Yarlagadda

6

intended to cause Gunnam to breach the agreement. As a result, Gunnam did breach the agreement and LSI suffered harm.

### E. Motion to strike and demurrer

Gunnam and Yarlagadda filed their special motion to strike on January 23, 2020.[4] They argued that LSI's claims arise from protected petitioning activity—namely, the Delaware lawsuit. Specifically, they contended that "the alleged wrongful disclosure that gives rise to and supplies a necessary element to each and every cause of action is Defendants' conduct in the Delaware litigation." For instance, they claimed that LSI relied on the use and disclosure of the scribd documents in connection with the Delaware lawsuit as the alleged wrongdoing and the predicate for this lawsuit.

They argued that the activity that gives rise to their asserted liability is "the decision to both speak about and use public LSI documents in the Delaware Action against LSI." According to them, these litigation-related activities in furtherance of TexasLDPC's right to petition the court in the Delaware lawsuit "are at the core of LSI's claims of actionable wrongdoing, and therefore each cause of action arises from protected activity." In addition, both Yarlagadda and Gunnam "are alleged to have provided TexasLDPC with documents regarding LSI's products accused of infringement to facilitate the filing of the Complaint, which alone constitutes conduct in furtherance of the right to petition."

With respect to the second prong of the anti-SLAPP analysis, they argued that LSI cannot show a probability of success on any of its claims. First, they claimed the complaint contained no provable facts that would support the allegation that Gunnam breached the agreement by retaining and misusing confidential LSI documents after he left LSI. They also argued that LSI had provided no allegation—much less evidence—

---

[4] Gunnam and Yarlagadda are jointly represented and filed all relevant pleadings and briefs in this action together.

7

that Gunnam downloaded or even had access to the presentations contained within the scribd documents.

At the same time they filed their special motion to strike, Gunnam and Yarlagadda also filed a demurrer to the complaint. They argued that the breach of contract cause of action is "so uncertain, ambiguous, and unintelligible that it is impossible to know what actions LSI contends constitute a breach." In addition, they claimed that LSI appeared to "assign wrongdoing to Dr. Gunnam based on conduct that falls well outside the bounds of any conceivable contractual obligation to LSI, and thus the Complaint fails to reasonably apprise Defendants of the allegedly wrongful conduct." With respect to the breach of the covenant of good faith and fair dealing cause of action, they claimed it is predicated on the same conduct as the breach of contract claim and should be dismissed as superfluous. Finally, they argued that the causes of action asserted against Yarlagadda should be dismissed because they are preempted by the California Uniform Trade Secrets Act, California Civil Code section 3426 et seq. and are barred by the litigation privilege.

LSI opposed the motion to strike and demurrer, arguing with respect to the motion that the alleged wrongdoing by Gunnam and Yarlagadda was entirely independent of the Delaware lawsuit and therefore not protected speech.[5] Specifically, it argued that the gravamen of its claims—that is, the "injury-producing conduct"—was breach of the agreement, including the improper use and disclosure of LSI's confidential documents, not TexasLDPC's subsequent filing of the Delaware lawsuit. LSI also argued that, although the trial court did not need to reach the second prong of the analysis, the evidence obtained thus far demonstrated that LSI would prevail on the merits.

---

[5] Prior to opposing the motion to strike, LSI filed a motion for relief from the automatic stay of discovery that otherwise would have applied pursuant to section 425.16, subdivision (g). The trial court granted the motion on June 3, 2020, required Gunnam and Yarlagadda to respond to limited discovery within 30 days, and continued the hearing on the motion to strike to September 2, 2020.

8

The hearings on the motion to strike and the demurrer were held on October 7, 2021. The trial court granted the motion to strike the causes of action against Gunnam, but denied the motion to strike the causes of action against Yarlagadda. The court determined that the breach of contract cause of action insinuates that Gunnam disclosed LSI's proprietary information so that Gunnam—through his financial stake in TexasLDPC—could use that information to sue LSI for patent infringement. According to the trial court, "the allegations are that defendant Gunnam caused LSI's proprietary information to be published in a public forum, in effect leaving evidence of LSI's misconduct . . . for the patent owner . . . to find and use to prosecute LSI . . . ." "Thus, the very act that gives rise to a breach of the [agreement] (defendant Gunnam's disclosure of LSI's proprietary/confidential information) is the same act that serves to prepare evidence for/encourage/counsel litigation by another (TexasLDPC)." Accordingly, the court determined that the allegations in the first cause of action arise from protected activity because they are communications preparatory to or in anticipation of bringing a lawsuit.

The trial court then determined that LSI had not demonstrated a probability of prevailing on the merits because it had not submitted any evidence of resulting damage from the alleged breach. The court did not address the probability of LSI prevailing on the merits as to any of the other elements of the breach of contract cause of action. It also determined that the second cause of action for breach of implied covenant of good faith and fair dealing is identical to the breach of contract action, and granted the motion as to that cause of action as well.

With respect to the causes of action against Yarlagadda, the trial court found that the alleged wrongful conduct was different from Gunnam's alleged wrongdoing. It concluded Yarlagadda's conduct was not dependent upon the content of what was disclosed and that LSI is not suing her for instituting the Delaware lawsuit—"instead, the focus is on defendant Yarlagadda inducing her husband and others to breach their

9

confidentiality agreements which is not protected activity." For that reason, the court did not reach the second prong of the anti-SLAPP analysis to determine whether LSI had submitted sufficient evidence to demonstrate that its claims against Yarlagadda had minimal merit.

Because the trial court granted the motion to strike the causes of action against Gunnam, it determined that the defendants' demurrer as to those causes was moot; it also overruled the demurrer as to the causes of action against Yarlagadda.

### F. Appeals

LSI timely filed a notice of appeal of the trial court's order granting the motion to strike the causes of action against Gunnam. Yarlagadda then timely appealed the same order as to its denial of the motion to strike the causes of action against her.

This court ordered the two appeals to be considered together for purposes of oral argument and disposition, and granted the parties' joint motion to combine briefing.

## II. DISCUSSION

### A. LSI's appeal (H049521)

LSI argues the motion to strike should have been denied because the causes of action against Gunnam do not arise from protected activity. First, it argues that directly or indirectly posting its confidential documents on scribd does not constitute protected activity under section 425.16. As LSI explains it, the basis of its claim is the posting of the information itself, not its subsequent use in the Delaware lawsuit. For that reason, Gunnam's motive for posting the documents on scribd is irrelevant, and the court must evaluate the allegedly wrongful and injurious conduct itself, rather than the damage that flows from the conduct.

Second, LSI argues that delivering confidential documents to Fish & Richardson and TexasLDPC is not protected activity under section 425.16. According to LSI, it bases its claim against Gunnam on the disclosure of the information to those entities;

10

Gunnam's motive and the parties' subsequent use of the information for the Delaware lawsuit does not alter that.

Third, LSI argues that Gunnam's violations of the agreement during his employment with LSI are not protected activity under section 425.16. LSI claims Gunnam e-mailed LSI's confidential information to Texas A&M and Marvell Semiconductor, another competitor, while he was employed with LSI, and retained documents with LSI's confidential information in violation of the agreement. None of those actions, LSI contends, were in furtherance of Gunnam's constitutional right of petition or free speech in connection with a public issue so as to constitute protected activity.

Finally, LSI argues that, even if its claims did arise from protected activity, it demonstrated a probability of prevailing on the merits.

Gunnam argues that the trial court's ruling was correct. Specifically, he contends that each cause of action in the complaint stems from the purported use and disclosure of documents in connection with the Delaware lawsuit. According to Gunnam, "[a]t its core, LSI's complaint alleges that Dr. Gunnam provided counsel with documents regarding LSI's infringing products to facilitate the filing of the Delaware Complaint, which clearly constitutes conduct in furtherance of the right to petition." In addition, Gunnam argues that, even beyond the complaint, LSI admitted in its opposition to the motion to strike and in its opening brief that it is suing Gunnam for strictly protected activity. Lastly, Gunnam argues the trial court correctly determined that LSI did not demonstrate a probability of prevailing on the merits.

As we explain below, we determine that LSI's causes of action against Gunnam arise from protected activity because they are based on actions undertaken preparatory to, and in anticipation, of litigation. However, we also determine that LSI submitted sufficient evidence to establish a probability of prevailing on the merits.

11

### *1. Applicable law and standard of review*

An anti-SLAPP motion allows a defendant to seek "early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880-881 (*Wilson*).)  The statute is " 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.]  To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*), quoting *Wilson*, *supra*, at pp. 883-884; § 425.16, subd. (b)(1).)

The anti-SLAPP statute defines an " 'act in furtherance of a person's right of petition or free speech' " as including:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)  As pertinent here, the constitutional right to petition includes the basic act of filing litigation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*).)

Resolution of an anti-SLAPP motion entails a two-step process.  "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the

claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

A claim "arises from" protected petitioning activity when the defendant's activity underlies or forms the basis for the claim. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) However, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

Merely because an action is filed after, or in response to, protected activity " 'does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Park*, *supra*, 2 Cal.5th at p. 1063, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park*, *supra*, at p. 1063 quoting *Navellier*, *supra*, at p. 92, italics omitted.) In ruling on an anti-SLAPP motion, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, at p. 1063.)

In many instances, a plaintiff pleads a " 'mixed cause of action' " that includes allegations of both protected and unprotected activity. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381 (*Baral*).) In such circumstances, "the moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them. In turn, a court should examine whether those acts are protected and supply the basis for any claims. It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are

13

'disregarded at this stage.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1010, quoting *Baral*, *supra*, at p. 396.)

Therefore, "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

We review de novo the grant or denial of an anti-SLAPP motion. (*Park*, *supra*, 2 Cal.5th at p. 1067.) We exercise our independent judgment "in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid*.) In doing so, "[w]e consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence ' " ' "only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " ' " (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 759 (*Laker*), quoting *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321; *Park*, *supra*, at p. 1067.)

### 2. Analysis

#### a. First prong

We begin by considering the elements of the challenged breach of contract cause of action and what acts by Gunnam supply those elements to form the basis for liability.[6] (*Bonni*, *supra*, 11 Cal.5th at p. 1015.) To establish a breach of contract, a plaintiff must demonstrate (1) the existence of the contract, (2) plaintiff's performance or excuse for

---

[6] LSI concedes that its cause of action for breach of covenant of good faith and fair dealing duplicates its breach of contract cause of action; our analysis therefore applies to both.

nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis West*).) The dispute regarding whether LSI's claims arise from protected activity centers solely on the third element, Gunnam's alleged breach.

We next identify the alleged injury-producing conduct Gunnam challenges. (*Baral, supra*, 1 Cal.5th at p. 396.) In his motion to strike, Gunnam argued that "the alleged wrongful disclosure that gives rise to and supplies a necessary element to each and every cause of action" is Gunnam's conduct in the Delaware lawsuit. On appeal, he argues that "each cause of action in the Complaint stems from the purported use and disclosure of documents in connection with the Delaware Action," and that "each of LSI's causes of action arises out of litigation-related conduct." Elsewhere, he contends that, "[a]t its core, LSI's complaint alleges that Dr. Gunnam provided counsel with documents regarding LSI's infringing products to facilitate the filing of the Delaware Complaint, which clearly constitutes conduct in furtherance of the right to petition."[7]

LSI, meanwhile, claims the injury-producing conduct was independent of the Delaware lawsuit, and instead consisted of three discrete actions or categories of action by Gunnam: (1) posting, or causing to be posted, LSI's confidential information on scribd; (2) disclosing confidential information to Fish & Richardson and TexasLDPC; and, (3) retaining and disclosing confidential information while employed with LSI. According to LSI, Gunnam's *motive* in taking those actions—to facilitate the subsequent lawsuit—is immaterial, as are the consequences of those actions. LSI made the same

---

[7] LSI argues in its reply brief that this court should disregard factual assertions in Gunnam's respondent's brief that are unsupported by citations to the record, pursuant to California Rules of Court, rule 8.204(a)(1)(C). We agree with LSI on this point and we decline to consider Gunnam's unsupported assertions. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [appellant must provide citations to record directing court to evidence supporting each factual assertion].) All references in this opinion to factual assertions made in Gunnam's respondent's brief are to those properly supported by citations to the record.

arguments in opposing Gunnam's motion to strike, contending that the "injury-producing conduct" was the improper use and disclosure of LSI's confidential documents, not TexasLDPC's subsequent filing of the Delaware lawsuit.

As noted above, in exercising our independent judgment, we consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff. (*Laker*, *supra*, 32 Cal.App.5th at p. 759.) Taking that approach here, we first determine that the complaint alleges the injury-producing acts to be Gunnam's posting of confidential information on scribd and his disclosure of confidential information to Fish & Richardson and TexasLDPC, and not the filing of the Delaware lawsuit.

The complaint itself does not clearly articulate or identify the specific acts alleged to constitute the breach. For example, it alleges that the confidential and proprietary information used and disclosed in the Delaware lawsuit and posted on scribd "was retained and/or disclosed by Gunnam in breach of his obligations under the [agreement]." It also alleges that "the confidential and proprietary information disclosed and relied on in the [Delaware lawsuit] and published on www.scribd.com was provided directly or indirectly by Gunnam" to Yarlagadda, TexasLDPC, scribd and others in breach of his obligations under the agreement. Further, it alleges that Gunnam breached his obligations under the agreement "by using and/or disclosing, and/or causing others to use and/or disclose, LSI's confidential and proprietary information without LSI's authorization."

It is not clear from these allegations alone whether the injury-producing conduct includes the use and disclosure in the Delaware lawsuit, or merely the posting of the information on scribd and the disclosure to other parties. However, the other pleadings and declarations in the record demonstrate that the complaint targets Gunnam's alleged posting of confidential information on scribd and disclosure of confidential information to Fish & Richardson and TexasLDPC. In its opposition to the motion to strike, for instance, LSI argued that the injury-producing conduct was the "improper disclosure and

16

use of LSI confidential documents, not TexasLDPC's subsequent filing of the Delaware Action." (See *Bonni*, *supra*, 11 Cal.5th at p. 1017 [taking account of plaintiff's statements in opposition to motion to strike to clarify complaint].) In support of its opposition to Gunnam's motion to strike, LSI submitted declarations attaching e-mails Gunnam kept after he left LSI that allegedly contained confidential information, which he later gave to Fish & Richardson. LSI also submitted a declaration from scribd.com's copyright and privacy manager regarding the posting of the confidential information that LSI argues "strongly suggests that Gunnam also indirectly provided additional information by posting LSI Proprietary Information to the public website Scribd.com."

Thus, to the extent Gunnam contends that the complaint alleges the injury-producing conduct to be the filing of the Delaware lawsuit itself, we disagree. (*Bel Air Internet*, *LLC v. Morales* (2018) 20 Cal.App.5th 924, 936 (*Bel Air*) ["courts have rejected efforts by moving parties to redefine the factual basis for a plaintiff's claims as described in the complaint to manufacture a ground to argue that the plaintiff's claims arise from protected conduct"].)

Nevertheless, having identified the alleged injury-producing acts, the question then becomes whether they arise out of protected activity. (*Area 51 Productions*, *Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594 (*Area 51*).) Gunnam argued in his motion to strike that protected activity under section 425.16, subdivision (e), includes "acts of communication that are preparatory to or in anticipation of bringing an action." Citing *Bel Air*, Gunnam argued that a statement has a sufficient connection with anticipated litigation if the person making the statement is engaged in a serious effort to encourage or counsel litigation by another, and that a person who counsels litigation by another exercises his or her own constitutional right to petition the government. The trial court agreed, holding that "the very act that gives rise to a breach of the [agreement] (defendant Gunnam's disclosure of LSI's proprietary/confidential information) is the

17

same act that serves to prepare evidence for/encourage/counsel litigation by another (TexasLDPC)."

We agree with Gunnam and the trial court on this point. In *Bel Air*, the plaintiff company alleged that the defendants had encouraged fellow employees to quit and sue the company for alleged employment violations rather than sign a release of such claims. (*Bel Air*, *supra*, 20 Cal.App.5th at p. 929.) The key issue determining whether the motion to strike satisfied the first prong of the anti-SLAPP analysis was whether the defendants' alleged statements encouraging other employees to quit and pursue lawsuits against the company "amount to communications made in connection with protected petitioning activity." (*Id.* at p. 935.) While the parties agreed that statements made in anticipation of litigation may fall into that category, they disagreed as to whether the defendants had made a sufficient showing that they were anticipating litigation when they allegedly made the statements to the other employees. (*Ibid.*)

The court recognized that "our Supreme Court has explained that communications that are ' "preparatory to or in anticipation of the bringing of an action or other official proceeding" ' are within the scope of protected conduct under Code of Civil Procedure section 425.16 . . . ." (*Bel Air*, *supra*, 20 Cal.App.5th at p. 940, citing *Briggs*, *supra*, 19 Cal.4th at p. 1115 [defendant's counseling of a tenant to pursue her legal remedies against her landlord was protected conduct]; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) Such conduct " ' "preparatory to" ' litigation can include communications in connection with counseling or encouraging others to sue." (*Bel Air*, at p. 940, citing *Briggs*, *supra*, at p. 1116 [statute does not require defendant to demonstrate that its protected statements or writings were made on its own behalf]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 18 [instigating lawsuits by others was protected conduct under § 425.16].)

The *Bel Air* court acknowledged that there is also a requirement to show that litigation was "seriously contemplated," which "ensures that prelitigation

18

communications are actually connected to litigation and that their protection therefore furthers the anti-SLAPP statute's purpose of early dismissal of meritless lawsuits that arise from protected petitioning activity." (*Bel Air*, *supra*, 20 Cal.App.5th at p. 941, citing *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824 [good faith and serious consideration requirement "guarantees that hollow threats of litigation are not protected"].)

Ultimately, the court concluded that the plaintiff's complaint showed that its contract claims arose from the defendants' serious and active encouragement of litigation. (*Bel Air*, *supra*, 20 Cal.App.5th at p. 941.) It noted that, where "the complaint itself shows that a claim arises from protected conduct (supplemented, if appropriate, with the plaintiff's description of the factual basis for its claim in its declarations), a moving party may rely on the plaintiff's allegations alone in making the showing necessary under prong one without submitting supporting evidence." (*Id*. at p. 936.) The plaintiff's own declarations and arguments made in the trial court confirmed that the defendants were seriously considering litigation at the time they encouraged other employees to quit and sue. (*Id*. at p. 942.)

We find *Bel Air* analogous to the facts at issue here. Most significantly, LSI's own characterizations of its complaint demonstrate that the alleged injury-producing conduct was undertaken preparatory to, or in anticipation of, bringing a lawsuit against LSI. As discussed above, the alleged injury-producing acts are Gunnam's posting of confidential information on scribd and disclosure to Fish & Richardson and TexasLDPC. LSI itself argues that Gunnam undertook those acts for the express purpose of facilitating a lawsuit. In its opposition to the motion to strike, LSI argued, "[t]he evidence establishes that, in violation of [the agreement] and unbeknownst to LSI, Gunnam . . . retained substantial LSI confidential information after he left LSI and disclosed this information to Fish & Richardson [] for their use in suing LSI." LSI also argued that Gunnam gave e-mails with confidential information to Fish & Richardson "to assist Fish

19

in suing on behalf of TexasLDPC," and that the Delaware complaint "incorporated the Scribd documents and other LSI confidential information that Gunnam provided to Fish for use in TexasLDPC's legal pursuit of LSI." LSI expressly contended that these actions were taken "as part of a plan and scheme by Gunnam and Yarlagadda to sue LSI."

With respect to posting the confidential information on scribd, LSI argued that "[t]here can be little doubt that the Scribd documents were posted to provide a 'clean path' for their use by TexasLDPC against LSI, creating plausible deniability for TexasLDPC that such use was not tainted." In other words, LSI's theory is, as the trial court determined, that Gunnam "caused LSI's proprietary information to be published in a public forum, in effect leaving evidence of LSI's misconduct (patent infringement) for the patent owner (TexasLDPC) to find and use to prosecute LSI, while hiding his own involvement in making that evidence available." On appeal, LSI similarly argues that Gunnam's "clear motive" in uploading the confidential documents to scribd was "[a] successful infringement lawsuit against LSI," which "likely would increase his royalties."

Thus, to the extent the complaint is vague on the question, LSI itself has confirmed that it alleges Gunnam undertook the injury-producing acts for the express purpose of enabling or encouraging a lawsuit. As in *Bel Air*, where "the complaint itself shows that a claim arises from protected conduct (supplemented, if appropriate, with the plaintiff's description of the factual basis for its claim in its declarations), a moving party may rely on the plaintiff's allegations alone in making the showing necessary under prong one without submitting supporting evidence."[8] (*Bel Air*, *supra*, 20 Cal.App.5th at p. 936.)

---

[8] Although Gunnam denies having undertaken the alleged injury-producing acts, he is still entitled to rely on the complaint and LSI's characterizations of it to argue that the alleged acts arise from protected activity. (*Bel Air*, *supra*, 20 Cal.App.5th at p. 939 [contrary rule would place an unfair burden on a defendant when the complaint alleges protected conduct but defendant disputes the factual underpinnings of the plaintiff's claims].)

Relying on *Park*, LSI emphasizes what it describes as the "careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication." In *Park*, the California Supreme Court held that the anti-SLAPP statute protects speech and petitioning activity taken in connection with an official proceeding—review of a professor's tenure—but not necessarily the decisions made or actions taken as a result of those proceedings. (*Park*, *supra*, 2 Cal.5th at p. 1060.) The court clarified that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid*.)

However, that distinction is immaterial here. We agree with LSI that its claim targets the alleged disclosure of the confidential information and not the subsequent filing of the Delaware lawsuit. The question, though, is whether that disclosure itself constitutes petitioning activity because it was taken in connection with and in anticipation of litigation, a question *Park* did not address. Resolving that question is not dependent on the subsequent filing of the Delaware lawsuit, but rather, as we have explained, on whether the acts were undertaken preparatory to or in anticipation of litigation.

LSI also argues that Gunnam's motive for disclosing the confidential information is irrelevant for purposes of the first prong anti-SLAPP analysis. That is, it contends that the relevant inquiry is merely the alleged injury-producing acts themselves—here, the disclosure of the confidential information—regardless of *why* Gunnam took the acts. LSI relies chiefly on *Wilson*, in which the California Supreme Court determined that discrimination and retaliation claims do not fall outside the scope of the anti-SLAPP statute. (*Wilson*, *supra*, 7 Cal.5th 871.) The court held that, in the context of a

discrimination claim, allegations of discriminatory motive do not categorically remove a claim from the reach of an anti-SLAPP motion. (*Id*. at p. 886.) Such claims are "necessarily *also* based on the [defendant's] alleged acts—that is, the various outward 'manifestations' of the [defendant's] alleged wrongful intent." (*Id*. at pp. 886-887.)

*Wilson* has no application here. The case does not stand for the proposition, as LSI asserts, that a party's motive in taking certain alleged injury-producing actions is irrelevant. On the contrary, as *Bel Air* explained, motive can be expressly relevant when evaluating whether an action was taken in connection with or in anticipation of litigation. (*Bel Air*, *supra*, 20 Cal.App.5th at p. 936.) LSI's contention that *Bel Air* is questionable in light of *Wilson* is meritless. (See, e.g., *Bonni*, *supra*, 11 Cal.5th at p. 1024 [discussions that precede the filing of a suit and other communications preparatory to or in anticipation of the bringing of an action are entitled to benefits of § 425.16].)

LSI contends that *Renewable Resources Coalition*, *Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384 (*Renewable Resources*) compels a result in its favor. In that case, the plaintiff sued for interference with contract after the defendants had purchased plaintiff's confidential documents and then used them to prosecute a complaint for election law violations. (*Id*. at p. 387.) The Court of Appeal reversed the trial court's granting of defendant's special motion to strike, holding that the gravamen of the plaintiff's action was that the defendants wrongfully obtained confidential documents, which was not an act in furtherance of their right of petition or free speech. (*Ibid*.) But the court did not address whether the injury-producing acts were undertaken in connection with, or in anticipation of, litigation, and there is no indication the issue was raised or considered. Cases are not authority for propositions not considered. (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.)

LSI relies on language in *Renewable Resources* stating that a court must look to the "allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct*." (*Renewable Resources*, *supra*, 218 Cal.App.4th at

22

pp. 396-397.) Applied here, LSI argues, the focus must be on the injury-producing acts, rather than the Delaware lawsuit that resulted from them. We agree that the focus must be on the injury-producing acts themselves and that the damage that flows from those acts is not part of that analysis. (*Park*, *supra*, 2 Cal.5th at p. 1060.) As we have explained, though, we focus only on the injury-producing acts that LSI itself has identified—the alleged disclosure of the confidential information. In analyzing whether those acts were taken in anticipation of litigation, we do not consider the damage that ultimately flowed from the acts. Rather, we consider what preceded the acts—namely, whether they were taken in anticipation of future litigation.

Lastly, LSI argues that Gunnam's violations of the agreement *during* his employment with LSI are not protected activity under section 425.16. LSI contends that while employed with the company, Gunnam disclosed confidential information to Texas A&M and another competitor, knowingly forwarded confidential patent applications to other employees, and planted Texas A&M's confidential source code in an LSI directory. However, LSI does not identify any such allegations in its complaint. In addition, LSI itself characterizes its own breach of contract cause of action as based on Gunnam's alleged wrongful *disclosure* of its confidential information by posting it on scribd and giving it to Fish & Richardson and TexasLDPC.

We conclude LSI's claims for breach of contract based on Gunnam's alleged disclosure of confidential information arise from protected activity.

### b. Second prong

We begin with a more detailed overview of the standards applicable to the second prong analysis. For each claim that arises from protected activity, the plaintiff must show the claim has at least " ' "minimal merit." ' " (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) The court must determine whether the plaintiff has shown, by admissible evidence, a probability of prevailing on the merits. (§ 425.16, subd. (b).) If the plaintiff cannot make that showing, the court must strike the claim. (*Bonni*, *supra*, at p. 1009.)

23

This second prong of the anti-SLAPP analysis has been described as a " 'summary-judgment-like procedure.' " (*Baral*, *supra*, 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at pp. 384-385.)

"Evidence supporting a reasonable inference may establish a prima facie case." (*Jenni Rivera Enterprises*, *LLC v. Latin World Entertainment Holdings*, *Inc.* (2019) 36 Cal.App.5th 766, 781 (*Jenni Rivera*); citing *Oasis West*, *supra*, 51 Cal.4th at p. 822 ["the proper inquiry in the context of [a special motion to strike] 'is whether the plaintiff proffers sufficient evidence for such an inference' "]; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1175 [plaintiff carried burden by showing reasonable inference defendant improperly disclosed confidential information].)

In this context, "[t]he 'burden of establishing a probability of prevailing is not high.' " (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 702; see also *Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352, 363.) "Indeed, ' "to satisfy due process, the burden placed on the plaintiff must be compatible with the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery." ' " (*Jenni Rivera*, *supra*, 36 Cal.App.5th at pp. 781-782, quoting *Hardin v. PDX*, *Inc.* (2014) 227 Cal.App.4th 159, 166; see also *Integrated Healthcare Holdings*, *Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 530 (*Integrated Healthcare Holdings*) ["We are inclined to allow the plaintiff . . . a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery.' "].)

LSI must make a prima facie factual showing sufficient to sustain a favorable judgment as to each element of its breach of contract cause of action. (*Baral*, *supra*, 1

Cal.5th at p. 384.) The trial court determined that LSI failed to make that showing because it had not submitted any admissible evidence of damages, and the court declined to reach the other elements. Accordingly, we will begin with the damages element.

Damages are a necessary element of a breach of contract cause of action. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 775.) The statutory measure of damages for breach of contract is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300; *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 9.)

LSI argues on appeal that it introduced sufficient evidence of damages through evidence of the Delaware lawsuit and its attendant costs. For instance, LSI submitted a declaration from counsel in support of its opposition to the motion to strike requesting attorney fees, which declaration documented legal fees incurred in the Delaware lawsuit. It argues that evidence of the Delaware lawsuit and the accompanying litigation costs constitute damages flowing from Gunnam's breach.

Accepting this evidence as true, we agree with LSI that it has stated a legally sufficient claim and made a prima facie showing sufficient to sustain a favorable judgment as to the damages element. (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.)

Gunnam argues only that, by describing the damages it has suffered as the Delaware lawsuit, LSI again focuses on protected activity. That argument misses the mark. The issue of whether the alleged injury-producing acts arise from protected activity is relevant only in the first prong of the anti-SLAPP analysis. (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) In the second prong analysis, we determine whether the plaintiff has submitted sufficient evidence to make a prima facie showing as to the elements of its

claim. We see no reason why the evidence LSI submitted is not sufficient admissible evidence of damages, and Gunnam has not identified any.[9]

We now turn to the breach element of LSI's cause of action, as the parties do not contest the existence of the contract or LSI's performance thereunder. (See *Oasis West*, *supra*, 51 Cal.4th at p. 821.) Our first task is to determine whether to resolve the second prong analysis of this element, or instead to remand for the trial court to do so in the first instance. In similar circumstances, the majority of appellate courts have declined to reach the second prong, "either because contested evidentiary issues existed or simply because it was appropriate for the trial court to decide the issue first." (See, e.g., *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58 (*Collier*) ["when we decide a matter in the first instance, we deprive the parties of a layer of independent review available to them when the matter is decided initially by the trial court"].)

However, we elect to address the remainder of the second prong analysis here for multiple reasons. First, the parties have fully briefed and argued the issues related to the second prong. Second, there are no contested evidentiary issues or outstanding objections that the trial court declined to reach. Third, the parties agree that this court should resolve the second prong, so there is no concern about depriving the parties of an independent layer of judicial review. (See, e.g., *Collier*, *supra*, 240 Cal.App.4th at p. 58.) In sum, under the facts of this case, we believe it will further judicial economy for us to reach the second prong analysis for the remainder of LSI's breach of contract cause of action. (See also *Schwarzburd v. Kensington Police Protection & Community Services District Board* (2014) 225 Cal.App.4th 1345, 1355 [electing to reach second prong in first instance].)

---

[9] For this reason, we need not reach LSI's alternative arguments that a showing of actual damages was not necessary because nominal damages and injunctive relief are permitted for breach of contract claims.

In doing so, we address whether LSI has carried its burden with respect to the two alleged acts of breach that we have identified as arising from protected activity: Gunnam's posting of confidential information on scribd, and his disclosure of confidential information to Fish & Richardson and TexasLDPC.

LSI concedes it presented no direct evidence that Gunnam actually posted the scribd documents. Instead, it characterizes the evidence as "circumstantial," but argues that "[e]vidence supporting a reasonable inference may suffice." According to LSI, the evidence here supports a reasonable inference that: "(1) Gunnam readily and willingly breached confidentiality agreements; (2) the Scribd Documents contained material to which Gunnam had access; (3) Gunnam had a motive to breach the Agreement by disclosing LSI's confidential information; and (4) the events leading to the Scribd disclosure and TexasLDPC's subsequent lawsuit against LSI were close in time."

In support of these arguments, LSI submitted a declaration from Kurt Worrell, its senior engineering manager, who had primary responsibility for the TWiki server. Worrell explained that the TWiki log files include information relating to a user's activity on the system, including identifying the documents the user reviews or edits. Worrell reviewed the log files relating to when Gunnam accessed the system, which showed that Gunnam accessed the server on March 2, 2011, the week before he resigned, reviewing documents relating to the "McLaren" and "Spyder" read channel architectures. Worrell's review of the files also showed that, prior to March 2, 2011, Gunnam had not accessed the server since December 17, 2010.

LSI also relied on the complaint in the Delaware lawsuit, which Gunnam had submitted in support of his motion to strike and which shows that the "Read Channel Overview Part 1" document posted on scribd included internal LSI documents authored by Gunnam, labeled "LSI Confidential" and "Internal Use Only," and describing aspects of the McLaren read channel architecture that Gunnam worked on at LSI and which Gunnam accessed on March 2, 2011.

Additionally, LSI submitted deposition testimony from Gunnam which, according to LSI, demonstrates that Gunnam would directly benefit from licensing revenue TexasLDPC generates from the Delaware lawsuit because a portion is paid to Texas A&M. In addition, Gunnam would indirectly benefit if TexasLDPC succeeds in the Delaware lawsuit because Yarlagadda is the company's majority owner and she and Gunnam share assets.

In addition, LSI submitted a declaration from Jason Bentley, Scribd, Inc.'s manager of copyright, abuse and privacy. Bentley described his company's response to LSI's deposition subpoena for production of business records it had served on scribd, explaining that the scribd documents were uploaded to the website on December 18, 2017, by someone using the name "Wei Wang." The user created a new account on that date, and did not log back into the scribd account after uploading the scribd documents. Bentley explained that the scribd documents consisted of two PDF document compilations entitled "Read Channel Overview Part 1" and "Read Channel Overview Part 2."

LSI also relied on a declaration from Yarlagadda, in which she explained that a TexasLDPC employee discovered the scribd documents just days later in December 2017, when he was searching the internet for evidence of how LSI was using LDPC decoders in hard disk drive controller chips.

LSI also submitted evidence of prior breaches of confidentiality agreements by Gunnam. For instance, it provided e-mails from 2008 showing that Gunnam had improperly published a technical document he had co-written that contained LSI's proprietary information. LSI also provided an e-mail and signed memorandum from Gunnam acknowledging his wrongdoing.

LSI provided e-mails showing that in 2008 Gunnam had revealed LSI's confidential information to Texas A&M, and in 2010 he disclosed confidential information regarding his current patent work to Marvell Semiconductor, his prior

28

employer and an LSI competitor. LSI also submitted e-mails from Gunnam to other LSI employees forwarding Texas A&M's confidential patent applications and source code, which LSI contends violated Gunnam's confidentiality agreement with LSI, as well as Gunnam's deposition testimony wherein he acknowledged that the information was confidential. And LSI submitted deposition testimony from Gunnam admitting that he printed and retained e-mails with LSI's confidential information before leaving LSI, and then provided that information to Fish & Richardson.

As we summarized above, evidence supporting a reasonable inference may suffice to carry a plaintiff's burden on the second prong. (See, e.g., *Jenni Rivera*, *supra*, 36 Cal.App.5th at p. 781 ["Evidence supporting a reasonable inference may establish a prima facie case."].) The question here, then, is whether the evidence LSI submitted supports a reasonable inference that Gunnam posted the scribd documents. In *Jenni Rivera*, the plaintiff sued a company for interference with contract, alleging it induced a third party to breach a nondisclosure agreement it had executed with the plaintiff. (*Ibid*.) The court determined that the evidence the plaintiff had submitted—a cease and desist letter and related correspondence, a declaration from a witness who had observed the third party sign the nondisclosure agreement, a forensic document examiner's opinion that he had signed the agreement, and the third party's inconsistent explanations regarding the agreement—gave rise to a reasonable inference that the defendant had knowledge of the agreement before taking actions substantially certain to induce a breach. (*Id*. at pp. 787-788.)

In *Oasis West*, a real estate developer sued an attorney who had represented the developer in an effort to obtain a city's approval of a redevelopment project. (*Oasis West*, *supra*, 51 Cal.4th at pp. 816-817.) Two years after ending representation of the developer, the attorney sought signatures on a referendum petition to overturn the city's project approval. (*Ibid*.) The developer alleged causes of action for breach of fiduciary duty, professional negligence and breach of contract, all predicated on assertions that the

29

attorney relied on confidential information in opposing and soliciting opposition to the project. (*Id.* at p. 822.) Explaining that "the proper inquiry in the context of an anti-SLAPP motion 'is whether the plaintiff proffers sufficient evidence for such an inference,' " the California Supreme Court held that the evidence submitted by the developer—that the attorney agreed to represent the developer in securing the approvals, acquired confidential information during the course of that representation, and then publicly opposed the same project—was sufficient to support the inference. (*Ibid.*)

Although the facts here are distinct from those at issue in *Jenni Rivera* and *Oasis West* in some respects, we similarly conclude that LSI has satisfied its burden to demonstrate a prima facie case, with reasonable inferences from admissible evidence, that Gunnam posted the scribd documents. LSI's evidence shows that the scribd documents included its confidential information that Gunnam both authored and had access to; that Gunnam had breached confidentiality agreements in other instances; that Gunnam had the motive to post the documents on scribd; and that one of his wife's employees searched for and found the scribd documents just days after they were posted.

As we have noted, courts are inclined to allow a plaintiff "a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery.' " (*Integrated Healthcare Holdings*, *supra*, 140 Cal.App.4th at p. 530.) Gunnam places great emphasis on the fact that LSI was granted leave to conduct discovery, which he characterizes as "exhaustive," "extensive," "absurdly broad," "full-scale," "intrusive, expensive and burdensome," "exacting" "far-reaching," and "fulsome." Yet, Gunnam has not identified any authority for the proposition that a different standard applies where the trial court granted limited discovery in response to a motion to strike. Nor has Gunnam demonstrated, despite his choice of adjectives, that the scope of discovery authorized here expanded LSI's opportunity to conduct discovery to

30

an extent that would warrant eliminating the "certain degree of leeway" commonly applied. (*Ibid.*)

Gunnam argues that LSI has offered no evidence that he had access to the scribd documents, retained them, "or even that they were confidential." For the reasons we have explained, we disagree. LSI's evidence demonstrated that: (1) Gunnam accessed documents relating to the "McLaren" and "Spyder" read channel architectures before leaving LSI, and (2) the scribd documents included internal LSI documents authored by Gunnam and labeled "LSI Confidential," which described aspects of the McLaren read channel architecture that Gunnam worked on at LSI and accessed on March 2, 2011. This evidence supports reasonable inferences that Gunnam had access to and retained the confidential scribd documents.

Gunnam also argues that the evidence "points to individuals unrelated to TexasLDPC or Defendants" as being responsible for the scribd posting. He notes that the "Document Properties" of the PDF containing the scribd documents identified the author as "jgarofalo," allegedly referring to Joe Garofalo, a former senior manager at LSI, and that the scribd documents were uploaded by "Wei Wang." However, we must accept the plaintiff's evidence as true, drawing all reasonable inferences from the evidence in favor of that party, and evaluating the defendant's evidence only to determine if it defeats the plaintiff's claim as a matter of law. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940, citing *Baral*, *supra*, 1 Cal.5th at pp. 384-385.) In addition, prima facie evidence " 'may be slight evidence which creates a reasonable inference of fact sought to be stablished but need not eliminate all contrary inferences.' " (*People v. Zamora* (2022) 73 Cal.App.5th 1084, 1091, quoting *Evans v. Paye* (1995) 32 Cal.App.4th 265, 280-281, fn. 13.)

We now turn to the other alleged act of breach that we have identified as arising from protected activity: Gunnam's disclosure of confidential information to Fish & Richardson and TexasLDPC. In support of this claim, LSI submitted evidence of

31

Gunnam's deposition testimony where he admitted that he kept copies of e-mails after he left LSI that contained LSI's confidential information and later gave them to Fish & Richardson, counsel for TexasLDPC.

Accepting this evidence as true, we conclude LSI has made a prima facie factual showing sufficient to sustain a favorable judgment on this claim. (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.)

### B. *Yarlagadda's appeal* (*H049523*)

We use the same analytical approach that we applied to LSI's appeal. First, we identify the alleged injury-producing conduct Yarlagadda challenges. (*Baral*, *supra*, 1 Cal.5th at p. 396.) Then we determine whether it arises from protected activity. (*Area 51*, *supra*, 20 Cal.App.5th at p. 594.)

The complaint sets forth causes of action against Yarlagadda for intentional interference with contract and inducement to breach contract. It specifically alleges that Yarlagadda knew or should have known that Gunnam had entered into the agreement, and that she engaged in actions designed and intended to induce a breach. On their face, those allegations identify the injury-producing act as Yarlagadda inducing Gunnam to breach the agreement—an action that necessarily preceded the alleged breach, which itself occurred prior to the filing of the Delaware lawsuit.

In its opposition to the motion to strike, LSI argued that its claims against Yarlagadda are "premised on the same breaches by Gunnam." Further, it argued that Yarlagadda created and controls TexasLDPC for the express purpose of commercializing the Texas A&M patents, from which Gunnam directly benefits, including the licensing revenue TexasLDPC generates. However, LSI also argued that Yarlagadda authorized the Delaware lawsuit, and filed it knowing that it relied on LSI's confidential information "sourced from her husband and illicitly obtained either directly or indirectly from him."

For purposes of the complaint's causes of action against Yarlagadda, we conclude that the alleged injury-producing acts consist of inducing Gunnam to disclose the

32

confidential information, and the filing of the Delaware lawsuit. For the same reasons set forth above, the inducement claim arises from protected activity because it was based on actions taken preparatory to and in anticipation of litigation. (*Bel Air*, *supra*, 20 Cal.App.5th at p. 936.) The filing of the Delaware lawsuit itself constitutes protected petitioning activity. (*Briggs*, *supra*, 19 Cal.4th at p. 1115 [the constitutional right to petition includes the basic act of filing litigation], citing *Dove Audio*, *Inc. v. Rosenfeld*, *Meyer & Susman* (1996) 47 Cal.App.4th 777, 784.)

Because the trial court determined that LSI's claims against Yarlagadda did not arise from protected activity, it did not reach the second prong of the anti-SLAPP analysis. For the same reasons discussed above in LSI's appeal, we elect to decide this matter in the first instance.

LSI alleges causes of action against Yarlagadda for intentional interference with contract and inducement to breach contract. "The two torts, though related, are distinct." (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 291, citing *Shamblin v. Berge* (1985) 166 Cal.App.3d 118, 122-123.) The first protects against intentional acts designed to produce an actual breach and requires that a plaintiff prove: (1) a valid and existing contract with a third party; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by defendant's unjustified or wrongful conduct; and (5) damages were suffered as a result. (*Little*, *supra*, at pp. 291-292.) The second tort " 'is slightly broader in that it protects against intentional acts not necessarily resulting in a breach. [Citations.] It requires that a plaintiff prove: (1) . . . a valid and existing contract with a third party; (2) defendant had knowledge of this contract; (3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the relationship; and (5) resulting damages.' " (*Ibid.*, quoting *Shamblin*, *supra*, at pp. 122-123.)

Here, LSI has identified no evidence to sustain a favorable judgment that Yarlagadda intended to induce Gunnam to breach the agreement, or otherwise committed any intentional acts designed to interfere with the agreement, which defeats both causes of action. As discussed above, LSI alleges that Gunnam breached the agreement by posting confidential information on scribd and providing confidential information to Fish & Richardson. However, there is no evidence of any actions that Yarlagadda took to induce those alleged breaches. LSI identifies evidence which it claims shows Yarlagadda's motive to induce a breach by Gunnam—her formation of TexasLDPC to commercialize the Texas A&M patents. But LSI does not explain how formation of the company or commercialization of those patents were predicated on, or intended to induce, Gunnam's breach of his confidentiality agreement.

Separately, LSI argues that Yarlagadda's involvement in the Delaware lawsuit is evidence that she intentionally interfered with the agreement. However, LSI has not identified any evidence that the filing of the Delaware lawsuit—or any other actions Yarlagadda took in relation thereto—actually induced Gunnam's breach of the agreement in any way.

LSI has failed to carry its burden with respect to the second prong analysis for its claims against Yarlagadda.

### III.  DISPOSITION

In both H049521 and H049523, we reverse the trial court's order.

In H049521, we remand to the trial court with directions to enter a new order denying the motion to strike as to LSI's causes of action against Gunnam.

In H049523, we remand with directions to enter a new order granting Yarlagadda's motion to strike as to the causes of action against her.

Each party shall bear its own costs on appeal.

_____
                              Wilson, J.

WE CONCUR:

_____
              Grover, Acting P.J.

_____
              Danner, J.

LSI Corporation v. Gunnam et al.
H049521

LSI Corporation v. Yarlagadda et al.
H049523